## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK SHAFFER, 512 Carvine Court, Wexford, PA 15090, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | <u>JURY TRIAL DEMANDED</u> |
| v. | |
| THE GEORGE WASHINGTON UNIVERSITY, 1918 F Street, NW, Washington, DC 20052, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.      NATURE OF ACTION ..................................................................................................1

II.     JURISDICTION AND VENUE ...................................................................................2

III.    PARTIES .......................................................................................................................3

IV.     FACTS ...........................................................................................................................5

        A.      Background ........................................................................................................5

        B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................7

        C.      Defendant's Refusal To Issue Tuition And Fee Refunds ......................................12

V.      CLASS ACTION ALLEGATIONS ...........................................................................13

VI.     CAUSES OF ACTION ................................................................................................16

        COUNT I  BREACH OF CONTRACT .......................................................................16

        COUNT II  UNJUST ENRICHMENT ........................................................................17

        COUNT III  CONVERSION ........................................................................................18

PRAYER FOR RELIEF .........................................................................................................19

JURY DEMAND ......................................................................................................................19

Plaintiff, Mark Shaffer, individually and on behalf of all others similarly situated, for his

Class Action Complaint against Defendant The George Washington University ("GW"), based

upon personal knowledge as to his own actions and based upon the investigation of counsel

regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many

Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1]

Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and

universities across the country to shut down their campuses, evict students from campus

residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues

to charge for tuition and fees as if nothing has changed, continuing to reap the financial benefit

of millions of dollars from students. Defendant does so despite students' complete inability to

continue school as normal, occupy campus buildings and dormitories, or avail themselves of

school programs and events. So while students enrolled and paid Defendant for a comprehensive

academic experience, Defendant instead offers Plaintiff and the Class Members something far

less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and

peer interaction, separated from program resources, and barred from facilities vital to study.

Plaintiff, students and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid and did not received the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Pennsylvania, whereas Defendant is a citizen of the District of Columbia for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a jurisdiction other than the District of

Columbia, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

6.      Venue is appropriate in this District because Defendant is located within the District of Columbia. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

7.      Plaintiff Mark Shaffer is a citizen and resident of the State of Pennsylvania. Plaintiff is the parent of a current GW student and paid his daughter's tuition and fees for Defendant's Spring 2020 academic term at Defendant.

8.      Plaintiff and Plaintiff's daughter is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, assessed or demanded by Defendant for the Spring 2020 term.

9.      Plaintiff paid Defendant for opportunities and services that his daughter will not receive, including on-campus education, facilities, services, and activities.

10.     While Plaintiff's daughter could have obtained her degree on-line, Plaintiff's daughter specifically selected an in-person, in-class experience for the variety of educational experiences and benefits that only an in-person program can deliver.

11.     With GW's campus closure and transition to an online only educational experience, Plaintiff's daughter has suffered a decreased quality of experience, education, and

---

[2] Less than 10% of students attending GW come from within the District of Columbia. https://www.collegefactual.com/colleges/george-washington-university/student-life/diversity/.

lost access to important university facilities and experiences that were bargained for by selecting in-person experiences.

12.     For example, Plaintiff's daughter has lost use of vital library access and special tools available only physically in the library or library computer systems, which Defendant cannot and/or has been unable to make available to students online.

13.     Furthermore, Plaintiff's daughter lost access to student-organizations and associated student activities. Plaintiff's daughter was an active student-organization participant but due to Defendant's cancellation of all student events, Plaintiff's daughter has lost all benefits associated with her participation in such an organization and events.

14.     And with the transition to online only classes, Plaintiff's daughter has noticed a shift in and loss of academic rigor.

15.     While Plaintiff paid GW for an in-class experience that would enable his daughter to communicate directly with her professors, attend office hours, and work through issues in-person, such experiences are non-existent following Defendant's campus closure. Moreover, students faced significant delay associated with the shift from the bargained for in-person experience to online coursework, causing back loading of work and pushed back deadlines. Such a transition has also made it difficult to connect with professors and staff, a critical component to the bargained-for experience.

16.     On top of these difficulties, some professors are uncomfortable with the use of online educational delivery technology for both classwork and student interaction.

17.     As a result, while Plaintiff and other students pay for in-person access to renowned faculty as an important component of the GW experience, Defendant excluded students from such access for the Spring 2020 term.

-4-

18.     Defendant The George Washington University is an institution of higher learning located in Washington, D.C. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

19.     Chartered in 1821, The George Washington University has a current enrollment of approximately 28,000 undergraduate and graduate students across 10 schools and colleges.

20.     As of June 30, 2019, Defendant's endowment totaled approximately $1.779 billion and the university ended the fiscal year with assets totaling more than $4.748 billion. Defendant collected $774.143 million in student tuition and fees (net of $333,821 university funded scholarships)—a $21.2 million increase from the year before—with Defendant's total operating revenues totaling $1.546 billion.

21.     In July 2017, Defendant announced the final results of its largest ever fundraising campaign—"Making History: The Campaign for GW"—through which nearly 67,000 donors contributed more than $1.02 billion to the university. During the campaign, GW raised: (1) more than $177 million to support students, including 128 new endowments for student financial aid; (2) more than $626 million to enhance academics, including 23 new endowed faculty positions; (3) more than $163 million for facilities; and (4) an additional $57 million in unrestricted funds to address other university needs.

22.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

23.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

24.     A few examples of such efforts to promote that experience follow. GW promotes its Foggy Bottom Campus as combining "the academic and residential amenities of a top notch university with the excitement and convenience of living in the heart of the city. From lecture halls to high tech labs, and small group meeting rooms to open study spaces, you'll find a wide range of learning environments to fit your needs and aspirations."[3]

25.     But GW also notes that "learning goes well beyond attending lectures and writing papers. Our schools and colleges provide a place for you to debate and discuss how to make a difference in the world and then actually go do it. Your classmates, friends and professors will motivate you to use what you're learning, as well as your skills, ideas and passions, to help others and pave a path for your future."[4]

26.     GW recognizes its campus life as integral to student learning experiences: "Living at GW grants you the rare opportunity to encounter a variety of new cultural experiences while learning and interning at world-class institutions. Residence hall life is an essential aspect of your college experience, and some of your lifelong friends will first be your neighbors and roommates. During your time at GW, you'll likely find fellow Colonials who share your interests. Whether it's leadership, politics, arts and culture, athletics or service that moves you, GW students engage in more than 450 clubs and student organizations on campus. Pursuing your passions and sharing your diversity plays an integral role in building our community."[5]

---

[3] https://www.gwu.edu/foggy-bottom-campus.

[4] https://www.gwu.edu/schools-colleges.

[5] https://www.gwu.edu/campus-life.

27.     To obtain such educational opportunities and activities, Plaintiff and the Class

Members pay, in whole or in part, significant tuition, fees, and/or room and board.

28.     For the Spring term 2020, Defendant assesses the following: between $25,875 and

$29,275 (depending on when the student entered study) for undergraduate tuition, between

$1,765 to 2,225 per credit (depending on the student's course of study), student association fees

at $3.00 per credit hour, dining plans ranging from $1,525 to $2,375, and residence hall rates

ranging from $4,675 to $8,420 (depending on the residence hall).

29.     Such charges for study are significantly higher than online only programs.

Schools delivering an online-only educational experience assess significantly discounted rates

for delivering such educational services. For example, Western Governor's University charges

flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per

course for online undergraduate programs and $1,881 per course for online graduate programs.

30.     Such charges are also more than what Defendant charges for online courses of

study. For example, while Defendant ordinarily assesses graduate tuition per credit at $1,965 for

the School of Engineering & Applied Science, Defendant charges graduate students seeking an

"M.S. *(online)*" for Engineering Management & Systems Engineering at a significantly reduced

rate, $975 per credit.

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

31.     On December 31, 2019, governmental entities in Wuhan, China confirmed that

health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days

later, researchers in China identified a new virus that had infected dozens of people in Asia,

subsequently identified and referred to as the novel coronavirus, or COVID-19.

32.     By January 21, 2020, officials in the United States were confirming the first

known domestic infections of COVID-19.

-7-

33.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Heath Organization officially declared COVID-19 as a "public health emergency of international concern."

34.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

35.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

36.     On or about March 10, 2015, Defendant began closing its campus. That day, GW informed students that "beginning Monday, March 23, most GW classes will move online, and they will remain online through at least April 5. The university will remain open and operational during this period, and all faculty and staff should maintain their regular work schedules. We will update you by March 27, if we will continue with remotely held classes beyond April 5." It also suspended all in-person student organization activities and events. And it effectively evicted the GW student-body from residence halls, noting: "After spring break, all residential students are expected to no longer be living in student housing as of March 21 until the end of the instructional continuity period . . . Students who do not apply to remain on campus will not have access to the residence halls after 5 p.m. on March 20."[6]

---

[6] https://campusadvisories.gwu.edu/covid-19-updates-president-leblanc.

37.     On March 13, 2020, GW announced that it would be limiting access to campus buildings on March 14, 2020.[7]

38.     And by March 16, 2020, Defendant decided "to extend the virtual learning period through the end of the spring semester" and cancelled all on-campus events through the end of the semester.[8]

39.     Though the reasons for such closures are justified the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

40.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

41.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . .  It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[9]

---

[7] https://campusadvisories.gwu.edu/covid-19-update-limited-access-campus-buildings.

[8] https://campusadvisories.gwu.edu/important-covid-19-message-president-leblanc.

[9] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

42.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[10]

43.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[11]

44.     GW students echo these efforts. GW students via a Change.org petition with over 2,000 signatures, are seeking a partial refund of spring semester tuition, noting the following:

---

[10] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[11] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

"GW has transitioned to online classes and is not letting students return to campus. Due to classes being online, GW needs to give a partial refund to all students. Students pay to attend in-person classes, not online ones. If students wanted to attend online classes, they could have chosen to do so somewhere else for cheaper.

Many students cannot properly learn in this environment and some professors are not even holding any sort of class. Some professors have told us to essentially self-learn the material and just reach out for questions. What are we paying for? If we wanted to teach ourselves, we would not be attending GWU.

In the wake of COVID-19, GW should be sympathetic to students and families. Many students and families of students are struggling with unemployment and other stressors. GW needs to be sensitive to this.

MOST IMPORTANTLY, it is not fair or ethical to keep full tuition when the promised service is not being provided. Students pay the full amount of their tuition to attend in-person classes to succeed and learn hands-on. Online classes do not provide the same experience. GW is not holding up their end of the deal when it comes to providing education; therefore, we should not be paying our full tuition."[12]

45.     And as reported in The GW Hatchet student newspaper:

Samim, the petition's creator, said in an interview that she created the petition because it's "really unfair" for officials to charge students the full cost of tuition while classes are held virtually when online schools throughout the country cost "way less."

"What are we paying for if we're not getting that?" she said about online classes. "We're just paying to have Zoom. Some professors, they're not even doing Zoom, they're doing like, teach yourself basically with these slides. And if I'm teaching myself, what am I paying for?"

Samim said she is not surprised by the number of signatures the petition has garnered, adding that officials should acknowledge the petition's support and partially refund tuition as they have with other student expenses, like housing and dining.

---

[12] https://www.change.org/p/george-washington-university-gw-needs-to-refund-half-of-the-tuition-for-all-gw-students.

010920-14/1260664 V1

"I just want them to address it because I think they're also aware that this is an issue, and the fact they haven't addressed it is shady to me," she said. "Because I'm like, 'You guys don't want to put ideas in people's heads.' Is that why you're not seeing it? What's going on?"[13]

## C.    Defendant's Refusal To Issue Tuition And Fee Refunds

46.    Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing as soon as possible and no later than March 20, 2020.

47.    While Defendant has agreed to prorate housing and dining as of March 20, 2020, it has not agreed to do the same with tuition or mandatory fees.

48.    Rather, Defendant announced tuition will remain the same for the Spring 2020 term based on a disputed statement "we continue to deliver quality education, the tuition charged remains the same regardless of format."[14]

49.    Such denials of tuition refunds was reported in The GW Hatchet, confirming "officials have said they do not plan to refund tuition dollars."[15]

50.    It does so notwithstanding its recognition that online classes were "not how our students expected to complete their classes this spring."[16]

51.    It also does so notwithstanding the fact that it is eligible to receive $9,118,529 in aid under the federal stimulus bill.[17]

---

[13] https://www.gwhatchet.com/2020/03/29/more-than-1200-people-sign-petition-urging-officials-to-refund-half-of-spring-tuition/.

[14] https://campusadvisories.gwu.edu/covid-19-frequently-asked-questions#continuity-courses.

[15] https://www.gwhatchet.com/2020/04/13/how-gws-covid-19-response-stacks-up-with-its-peers/.

[16] https://campusadvisories.gwu.edu/covid-19-frequently-asked-questions#continuity-courses.

[17] https://edsource.org/2020/searchable-database-how-much-will-california-colleges-get-in-emergency-stimulus-funds/628749

-12-

## V.    CLASS ACTION ALLEGATIONS

52.    Plaintiff sues under Rule 23(a), (b)(5), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of himself and a Class defined as follows:

> All people paying Defendant, in whole or in part, personally and/or
> on behalf of others, for Spring 2020 tuition, fees, and/or room
> board for in-person instruction and use of campus facilities, but
> who were denied use of and/or access to in-person instruction
> and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further

excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or

amend the Class definition including through the creation of sub-classes if necessary, as

appropriate, during this litigation.

53.    The definition of the Class is unambiguous. Plaintiff is a member of the Class

Plaintiff seeks to represent. Class Members can be notified of the class action through contact

information and/or address lists maintained in the usual course of business by Defendant.

54.    Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed

that their individual joinder of all Class Members is impracticable. The precise number of Class

members is unknown to Plaintiff but may be ascertained from Defendant's records, however,

given the thousands of students enrolled at Defendant in a given year, that number greatly

exceeds the number to make joinder possible. Class Members may be notified of the pendency of

this action by recognized, Court-approved notice dissemination methods, which may include

U.S. Mail, electronic mail, Internet postings, and/or published notice.

55.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff

and the Class Members, making appropriate final injunctive relief and declaratory relief

regarding the Class under Rule 23(b)(2).

-13-

56.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

57.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.      Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.      Whether Defendant violated the common law of unjust enrichment;

e.      Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

58.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

59.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is the parent of a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff's daughter was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

60.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

61.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

62.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and

-15-

provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

63. Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

64. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI. CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

65. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

66. Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

67. Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

68. Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

69. However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or

eliminated Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

70. Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

71. Plaintiff and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

72. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

73. At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that students could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

74. Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

75. Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

76. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

010920-14/1260664 V1

77.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

78.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board

## COUNT III

## CONVERSION

79.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

80.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

81.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

82.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

010920-14/1260664 V1

83.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

84.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: May 1, 2020                     Respectfully submitted,

                                       By: /s/ *Andrew S. Levetown*
                                       Glenn Ivey (Bar No. 414331)
                                       Andrew S. Levetown (Bar No. 422714)
                                       IVEY & LEVETOWN, LLP
                                       6411 Ivy Lane, Suite 304
                                       Greenbelt, MD 20770
                                       (703) 618-2264
                                       ivey@iveylevetown.com
                                       asl@iveylevetown.com

                                       Steve W. Berman (*Pro Hac Vice* Forthcoming)
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       1301 Second Avenue, Suite 2000
                                       Seattle, WA 98101
                                       (206) 623-7292
                                       steve@hbsslaw.com

                                       Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
                                       Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       455 N. Cityfront Plaza Dr., Suite 2410
                                       Chicago, IL 60611
                                       (708) 628-4949
                                       dank@hbsslaw.com
                                       whitneys@hbsslaw.com

                                       *Attorneys for Plaintiff, individually and on behalf of*
                                       *all others similarly situated*