**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK SHAFFER, MARGARET MAULDIN, CHARAFEDDINE ZAITOUN, and MARC LESSIN, Individually and on Behalf of All Others Similarly Situated, | Civil No. 1:20-cv-01145-RJL |
| Plaintiffs, | |
| v. | |
| THE GEORGE WASHINGTON UNIVERSITY and THE BOARD OF TRUSTEES OF GEORGE WASHINGTON UNIVERSITY, | |
| Defendants. | |

## DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am a Senior Vice President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.  Hilsoft Notifications is a business unit of Epiq.

4.      The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

---

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

## OVERVIEW

5.      This declaration describes the implementation of the Settlement Notice Plan ("Notice Plan") and notices (the "Notice" or "Notices") for *Shaffer, et al. v. George Washington University, et al.* Case No. 1:20-cv-01145, pending in the United States District Court for the District of Columbia.  Epiq designed this Notice Plan based on our extensive prior experience and research into the notice issues particular to this case.  We designed and implemented a Notice Plan that was the best method practicable under the circumstances and provided Notice to the Settlement Class.

## NOTICE PLANNING METHODOLOGY

6.      Federal Rule of Civil Procedure 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1]  The Notice Plan satisfied these requirements.

7.      The Notice Plan was designed to reach the greatest practicable number of Settlement Class Members with individual notice via email and/or mail.  The Notice Plan individual notice efforts reached approximately 98.8% of the identified Settlement Class.  The reach was further enhanced by a Publication Notice in selected national newspapers, digital/internet notice and social media, internet sponsored search listings, an informational release, and a Settlement Website.  In my experience, the reach of the Notice Plan was consistent with other court-approved notice plans, was the best notice practicable under the circumstances, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2]

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

[2] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

## CAFA NOTICE

8.      On August 10, 2023, Epiq sent 57 CAFA Notice Packages ("CAFA Notice"), as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715.   The CAFA Notice was mailed via United States Postal Service ("USPS") Certified Mail to 55 officials, which included the Attorneys General of 49 states, the District of Columbia, and the United States Territories.  As per the direction of the Office of the Nevada Attorney General, the CAFA Notice was sent to the Nevada Attorney General electronically via email. The CAFA Notice was also sent via United Parcel Service ("UPS") to the Attorney General of the United States.  Details regarding the CAFA Notice mailing are provided in the *Declaration of Kyle S. Bingham on Implementation of CAFA Notice*, dated August 10, 2023, which is included as **Attachment 1**.

## NOTICE PLAN DETAIL

9.      On December 12, 2023, the Court approved the Notice Plan and appointed Epiq as the Settlement Administrator in the *Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Representatives, Appointing Class Counsel, and Approving Notice Plan* ("Preliminary Approval Order")*.*  In the Preliminary Approval Order, the Court approved the following "Settlement Class":

> All Students and Payors who paid or incurred tuition and/or fees to the George Washington University in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety.

> Excluded from the Settlement Class are (1) any Judge or Magistrate Judge presiding over this Action and members of their families; (2) Defendants; (3) Persons who properly execute and file a timely request for exclusion from the class; (4) the legal representatives, successors or assigns of any such excluded persons; (5) GW Students or Payors who did not pay any tuition or fees for the Spring 2020 Semester, i.e. tuition and fees were paid for by institutional aid, tuition benefits, federal/state/local grants, GI/Yellow Ribbon benefits, outside scholarships, and/or third party sponsorships; and (6) any Persons enrolled in Defendant's entirely online or continuous enrollment programs at the start of the Spring 2020 Semester.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

10.     After the Court's Preliminary Approval Order was entered, Epiq began to implement the Notice Plan.  This declaration details the notice activities undertaken to date and explains how and why the Notice Plan was comprehensive and well-suited to reach the Settlement Class Members.  This declaration also discusses the administration activity to date.

## NOTICE PLAN

### *Individual Notice*

11.     Between December 18, 2023, and January 3, 2024, Epiq received two data files with 25,948 Settlement Class Member records, which included names, last known postal addresses, and email addresses.  Epiq deduplicated and rolled-up the account records and loaded the unique, identified Settlement Class Member records into its database for this Settlement.  These efforts resulted in 19,875 unique, identified Settlement Class Member records.  An Email Notice was sent to all identified Settlement Class Members for whom a valid email address was available, and a Short Form Notice was sent via USPS first class mail to all identified Settlement Class Members with a postal address for whom the Email Notice was undeliverable after multiples attempts.  As a result, Epiq sent 35,740 Email Notices (many of the identified Settlement Class Members included more than one valid email address) and 447 Short Form Notices to identified Settlement Class Members. The Notices clearly described the case and the legal rights of the Settlement Class Members.  In addition, the Notices directed the recipients to a Settlement Website where they could access additional information.

### *Individual Notice – Email*

12.     Commencing on January 2, 2024, Epiq sent 35,740 Email Notices to all identified Settlement Class Members for whom a valid email address was available (some Settlement Class Members had more than one email address).  The following industry standard best practices were followed for the Email Notice efforts.  The Email Notice was drafted in such a way that the subject line, the sender, and the body of the message would overcome SPAM filters and ensure readership to the fullest extent reasonably practicable.  For instance, the Email Notice used an embedded html text format.  This format provided easy to read text without graphics, tables,

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

images, attachments, and other elements that would have increased the likelihood that the message would have been blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices were sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts.  Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from authorized mail servers.  Each Email Notice was also transmitted with a unique message identifier.  The Email Notice included an embedded link and password to the Settlement Website.  By clicking the link, recipients were able to access the Long Form Notice, Settlement Agreement, and other information about the Settlement.  The Email Notice is included as **Attachment 2.**

13.     If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier.  For any Email Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by email.  After completion of the Email Notice efforts, 1,915 emails were not deliverable.

### *Individual Notice – Direct Mail*

14.     On January 9, 2024, Epiq sent 447 Short Form Notices to all identified Settlement Class Members with an associated physical address for whom the Email Notice was undeliverable after multiple attempts.  The Short Form Notice was sent via USPS first-class mail. The Short Form Notice clearly and concisely described the Settlement and the legal rights of the Settlement Class Members and directed Settlement Class Members to the Settlement Website for additional information.  The Short Form Notice is included as **Attachment 3**.

15.     Prior to sending the Short Form Notice, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

all address information was up-to-date and accurately formatted for mailing.[3]  In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

16.     The return address on the Short Form Notices is a post office box that Epiq maintains for this case.  The USPS automatically forwards Short Form Notices with an available forwarding address order that has not expired ("Postal Forwards").  Short Form Notices returned as undeliverable are re-mailed to any new address available through USPS information (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired, but was still within the time period in which the USPS returns the piece with the address indicated), or to better addresses that are found using a third-party address lookup service.  Upon successfully locating better addresses, Short Form Notices were promptly re-mailed.  As of February 23, 2024, Epiq has re-mailed three Short Form Notices.

17.     Additionally, a Claim Package (Long Form Notice, Election Form, and Payor Payment Form) was mailed to all persons who requested one via the toll-free telephone number or other means.  As of February 23, 2024, Epiq mailed 49 Claim Packages as a result of such requests.  The Long Form Notice is included as **Attachment 4.**  The Election Form is included as **Attachment 5.**  The Payor Payment Form Notice is included as **Attachment 6.**

### *Notice Results*

18.     As of February 23, 2024, an Email Notice and/or Short Form Notice was delivered to 19,651 of the 19,875 unique, identified Settlement Class Members.  This means the individual notice efforts reached approximately 98.8% of the identified Settlement Class Members.

---

[3] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™.  The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

### *Media Plan Summary*

19.    The Media Plan included various forms of notice including Publication Notice in selected national newspapers, digital/internet notice and social media, internet sponsored search listings, and an informational release.

### *Publication Notice*

20.    To supplement the individual notice efforts, a Publication Notice appeared in a weekday, national edition of *New York Times* and *The Washington Post*, as an approximate 1/8 page ad unit.  The selected publications include some of the largest circulating newspapers in the U.S.

| Publication | Run Date | Page # | Circulation |
|---|---|---|---|
| *New York Times, National* | 1/9/2024 | B3 | 297,097 |
| *The Washington Post* | 1/9/2024 | A3 | 140,837 |
| **TOTAL** | | | **437,934** |

21.    The selected business publications have a combined circulation of more than 437,000.  Individual tear sheets of the Publication Notice as it appeared in each of these selected newspaper publications are included as **Attachment 7.**

### *Internet Digital Notice Campaign*

22.    Internet advertising has become a standard component in legal notice programs.  The internet has proven to be an efficient and cost-effective method to target and provide measurable reach of persons covered by a settlement.  According to MRI-Simmons data, 97.2% of Adults aged 18+ in the United States are online and 85% of all Adults aged 18+ use social media.[4]

23.    The Notice Plan included targeted Digital Notice advertising on the *Google Display Network*.  The Digital Notices linked directly to the Settlement Website, thereby allowing visitors easy access to relevant information and documents.  Consistent with common practice, the Digital Notices used language from the Long Form Notice headline, which allowed users to identify themselves as potential Settlement Class Members.

---

[4] MRI-Simmons 2023 Survey of the American Consumer®.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

24.     The Notice Plan also included advertising on social media, which consisted of internet Digital Notices on *Facebook* in multiple sizes.

25.     All Digital Notices appeared on desktop, mobile, and tablet devices and were distributed to the selected targeted audiences.  Digital Notices were also targeted (remarketed) to people who clicked on a Digital Notice.

26.     More details regarding the target audiences and specific ad sizes of the Digital Notices are included as follows.

| *Network/Property* | *Target* | *Ad Sizes* | *Delivered Impressions* |
|---|---|---|---|
| *Google Display Network* | Custom Affinity & Intent:[5] George Washington University | 728x90, 300x250, 300x600, 970x250 | 10,568,143 |
| *Google Display Network* | Custom Affinity: George Washington University Student/ Alumni | 728x90, 300x250, 300x600, 970x250 | 5,436,920 |
| *Facebook* | Interest: George Washington University | Newsfeed & Right-Hand Column | 9,288,682 |
| *Facebook* | Interest: George Washington University Law School | Newsfeed & Right-Hand Column | 2,997,870 |
| *Facebook* | Interest: George Washington University Medicine | Newsfeed & Right-Hand Column | 2,923,341 |
| **Total** | | | **31,214,956** |

27.     Combined, more than 31.2 million impressions were generated by the Digital Notices, which were displayed nationwide.[6]  The internet advertising campaign ran from January 9, 2024, through February 5, 2024.  Clicking on the Digital Notices linked the readers to the Settlement Website, where the reader could easily obtain detailed information about the case. Examples of the Digital Notices are included as **Attachment 8**.

---

[5] Custom Affinity Audiences allow Digital Notices to be targeted to specific website content, here meaning websites, blogs, etc. that include George Washington University.  Custom Intent Audiences allow Digital Notices to be targeted to specific individuals who have searched and/or researched these specific topics., here meaning for information on George Washington University.

[6] The third-party ad management platform, ClickCease, will be used to audit Digital Notice ad placements. This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

*Sponsored Search Listings*

28.     To facilitate locating the Settlement Website, sponsored search listings were acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*. When search engine visitors search on selected common keyword combinations related to the Settlement, the sponsored search listing created for the Settlement was displayed at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen.  The sponsored search listings were displayed nationwide.  All sponsored search listings linked directly to the Settlement Website.

29.     The sponsored search listings began on January 9, 2024, and are running through March 9, 2024.  A complete list of the sponsored search keyword combinations is included as **Attachment 9**.  Examples of the sponsored search listing as displayed on each search engine are included as **Attachment 10.**

*Informational Release*

30.     To build additional reach and extend exposures, on January 9, 2024, a party-neutral Informational Release was issued nationwide over *PR Newswire* to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States as well as approximately 4,500 websites, online databases, internet networks, and social networking media.

31.     The Informational Release included the address of the Settlement Website and the toll-free telephone number.  The Informational Release served a valuable role by providing additional notice exposures beyond what was provided by the paid media.  The Informational Release is included as **Attachment 11**.

*Settlement Website*

32.     On December 22, 2023, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.GWSettlement.com).  Relevant documents, including the Class Action Settlement Agreement, Long Form Notice, Election Form, Payor Payment Form, and Complaint, among other documents are posted on the Settlement Website.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information.  The Settlement Website address was prominently displayed in all notice documents.  As of February 23, 2024, there have been 9,794 unique visitor sessions to the Settlement Website, and 16,856 web pages have been presented.

### Toll-Free Telephone Number and Other Contact Information

33.    On January 8, 2024, a toll-free telephone number (1-888-302-6048) was established for the Settlement.  Callers are able to hear an introductory message and also have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package (Long Form Notice, Election Form, and Payor Payment Form) be mailed to them.  The automated phone system is available 24 hours per day, 7 days per week. The toll-free telephone number was prominently displayed in all notice documents.  As of February 23, 2024, there have been 135 calls to the toll-free telephone number representing 365 minutes of use.

34.    A postal mailing address was established and continues to be available to allow Settlement Class Members to contact the Settlement Administrator to request additional information or ask questions.

### Requests for Exclusion and Objections

35.    The deadline to request exclusion (opt-out) from the Settlement or to object to the Settlement is March 11, 2024.  As of February 23, 2024, Epiq has received no requests for exclusion.  As of February 23, 2024, I am aware of no objections to the Settlement.

### Distribution Options

36.    The Notices provided a detailed summary of the relevant information about the Settlement, including that each Settlement Class Member who does not request exclusion from the Settlement will receive a payment automatically if the Settlement is approved.  The Notices

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

also include the Settlement Website address and that Settlement Class Members can choose to file an Election Form online or by mail prior to the claim filing deadline to update their address, and/or elect to receive a digital payment (with multiple options) instead of a traditional paper check.

**CONCLUSION**

37.    In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to settlement class members in any way.  All of these requirements were met in this case.

38.    The Notice Plan included an extensive individual notice effort to the identified Settlement Class Members.  With the address updating protocols that were used, the Notice Plan individual notice efforts reached approximately 98.8% of the identified Settlement Class Members.  The reach was further enhanced by a Publication Notice in selected national newspapers, digital/internet notice and social media, internet sponsored search listings, an informational release, and a Settlement Website.  The Federal Judicial Center's ("FJC") Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the Settlement Class.  It is reasonable to reach between 70–95%."[7]  Here, the Notice Plan we have developed and implemented achieved a reach at the high end of that standard.

---

[7] Fed. Judicial Ctr, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

39.     The Notice Plan followed the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: (a) to endeavor to actually inform the Settlement Class, and (b) to ensure that notice is reasonably calculated to do so:

a)     "[W]hen notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

b)     "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

40.     The Notice Plan provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rule of Civil Procedure, Rule 23 regarding notice, comported with the guidance for effective notice articulated in the Manual for Complex Litigation, Fourth and applicable FJC materials, and satisfied the requirements of due process, including its "desire to actually inform" requirement.

41.     The Notice Plan schedule afforded enough time to provide full and proper notice to Settlement Class Members before any opt-out and objection deadlines.

42.     I declare under penalty of perjury that the foregoing is true and correct.  Executed February 26, 2024.

_____
Cameron R. Azari, Esq.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

# Attachment 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARK SHAFFER, MARGARET MAULDIN,CHARAFEDDINE ZAITOUN, and MARC LESSIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>  v.<br><br>THE GEORGE WASHINGTON UNIVERSITY and THE BOARD OF TRUSTEES OF GEORGE WASHINGTON UNIVERSITY,<br><br>                    Defendants. | Civil No. 1:20-cv-01145-RJL |

## DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

I, KYLE S. BINGHAM, hereby declare and state as follows:

1.     My name is KYLE S. BINGHAM.  I am over the age of 25 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.     I am the Director of Legal Noticing for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  I have overseen and handled Class Action Fairness Act ("CAFA") notice mailings for more than 400 class action settlements.

3.     Epiq is a firm with more than 25 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services,

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

receipt and processing of opt-outs, coordination with the United States Postal Service ("USPS"), claims database management, claim adjudication, funds management and distribution services.

4.    The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

### CAFA NOTICE IMPLEMENTATION

5.    At the direction of counsel for Defendants The George Washington University and The Board of Trustees of George Washington University, 57 federal and state officials (the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia, and the United States Territories) were identified to receive CAFA notice.

6.    Epiq maintains a list of these federal and state officials with contact information for the purpose of providing CAFA notice.  Prior to mailing, the names and addresses selected from Epiq's list were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").[1]

7.    On August 10, 2023, Epiq sent 57 CAFA Notice Packages ("Notice"). The Notice was mailed via USPS Certified Mail to 55 officials (the Attorneys General of 49 states, the District of Columbia, and the United States Territories).  As per the direction of the Office of the Nevada Attorney General, the Notice was sent to the Nevada Attorney General electronically via email. The Notice was also sent via United Parcel Service ("UPS") to the Attorney General of the United States.  The CAFA Notice Service List (USPS Certified Mail, Email, and UPS) is included as **Attachment 1**.

---

[1] CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces.  The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

8.      The materials sent to the federal and state officials included a Cover Letter, which provided notice of the proposed Settlement of the above-captioned case.  The Cover Letter is included as **Attachment 2**.

9.      The cover letter was accompanied by a CD, which included the following:

a.      **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaint:**

- Class Action Complaint (filed May 1, 2020) and related materials; and

- Consolidated Class Action Complaint (filed July 15, 2020) and related material.

b.      **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

- Claim Form *(Exhibit A to the Class Action Settlement Agreement)*;

- Settlement Election Form *(Exhibit B to the Class Action Settlement Agreement)*;

- Email Notice *(Exhibit C to the Class Action Settlement Agreement)*;

- Postcard Notice *(Exhibit D to the Class Action Settlement Agreement)*;

- Publication Notice *(Exhibit E to the Class Action Settlement Agreement)*; and

- Long Form Notice *(Exhibit F to the Class Action Settlement Agreement).*

c.      **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The following documents were included:

- Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

- Class Action Settlement Agreement;

- Declaration of Daniel J. Kurowski in Support of Plaintiffs' Motion for Preliminary Approval;

  o  Hagens Berman Firm Resume *(Exhibit 1 to Declaration of Daniel J. Kurowski)*;

- Declaration of Cameron R. Azari, Esq. Regarding Settlement Notice Plan and Notices; and

- [Proposed] Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Representatives, Appointing Class Counsel, and Approval Notice Plan.

    d.    **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** A Geographic Analysis of potential Class Members was included on the CD.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on August 10, 2023.

_____
KYLE S. BINGHAM

# **Attachment 1**

**CAFA Notice Service List**
**USPS Certified Mail**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Treg Taylor | 1031 W 4th Ave | Suite 200 | Anchorage | AK | 99501 |
| Office of the Attorney General | Steve Marshall | 501 Washington Ave | | Montgomery | AL | 36104 |
| Office of the Attorney General | Tim Griffin | 323 Center St | Suite 200 | Little Rock | AR | 72201 |
| Office of the Attorney General | Kris Mayes | 2005 N Central Ave | | Phoenix | AZ | 85004 |
| Office of the Attorney General | CAFA Coordinator | Consumer Protection Section | 455 Golden Gate Ave Suite 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Phil Weiser | Ralph L Carr Colorado Judicial Center | 1300 Broadway Fl 10 | Denver | CO | 80203 |
| Office of the Attorney General | William Tong | 165 Capitol Ave | | Hartford | CT | 06106 |
| Office of the Attorney General | Brian Schwalb | 400 6th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Kathy Jennings | Carvel State Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Ashley Moody | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Chris Carr | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Anne E Lopez | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Brenna Bird | Hoover State Office Building | 1305 E Walnut St | Des Moines | IA | 50319 |
| Office of the Attorney General | Raul Labrador | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Kwame Raoul | 100 W Randolph St | | Chicago | IL | 60601 |
| Office of the Indiana Attorney General | Todd Rokita | Indiana Government Center South | 302 W Washington St Rm 5 | Indianapolis | IN | 46204 |
| Office of the Attorney General | Kris Kobach | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Daniel Cameron | 700 Capitol Ave Suite 118 | | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | PO Box 94005 | | Baton Rouge | LA | 70804 |
| Office of the Attorney General | Andrea Campbell | 1 Ashburton Pl 20th Fl | | Boston | MA | 02108 |
| Office of the Attorney General | Anthony G Brown | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Aaron Frey | 6 State House Station | | Augusta | ME | 04333 |
| Department of Attorney General | Dana Nessel | PO BOX 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Keith Ellison | 445 Minnesota St Ste 1400 | | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Andrew Bailey | 207 West High Street | PO Box 899 | Jefferson City | MO | 65102 |
| Mississippi Attorney General | Lynn Fitch | PO Box 220 | | Jackson | MS | 39205 |
| Office of the Attorney General | Austin Knudsen | 215 N Sanders 3rd Fl | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Josh Stein | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Drew H Wrigley | 600 E Boulevard Ave Dept 125 | | Bismarck | ND | 58505 |
| Nebraska Attorney General | Mike Hilgers | 2115 State Capitol | PO Box 98920 | Lincoln | NE | 68509 |
| Office of the Attorney General | John Formella | NH Department of Justice | 33 Capitol St | Concord | NH | 03301 |
| Office of the Attorney General | Matthew J Platkin | 25 Market Street | PO Box 080 | Trenton | NJ | 08625 |
| Office of the Attorney General | Raul Torrez | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | CAFA Coordinator | 28 Liberty Street 15th Floor | | New York | NY | 10005 |
| Office of the Attorney General | Dave Yost | 30 E Broad St Fl 14 | | Columbus | OH | 43215 |
| Office of the Attorney General | Genther Drummond | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Michelle A Henry | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter F Neronha | 150 S Main St | | Providence | RI | 02903 |
| Office of the Attorney General | Alan Wilson | PO Box 11549 | | Columbia | SC | 29211 |
| Office of the Attorney General | Marty Jackley | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Jonathan Skrmetti | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | PO Box 12548 | | Austin | TX | 78711 |
| Office of the Attorney General | Sean D Reyes | PO Box 142320 | | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Jason S Miyares | 202 N 9th St | | Richmond | VA | 23219 |
| Office of the Attorney General | Charity R Clark | 109 State St | | Montpelier | VT | 05609 |
| Office of the Attorney General | Bob Ferguson | 800 5th Ave Ste 2000 | | Seattle | WA | 98104 |
| Office of the Attorney General | Josh Kaul | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex Bldg 1 Room E 26 | 1900 Kanawha Blvd E | Charleston | WV | 25305 |
| Office of the Attorney General | Bridget Hill | 109 State Capital | | Cheyenne | WY | 82002 |
| Department of Legal Affairs | Fainu'ulei Falefatu Ala'ilima-Utu | American Samoa Gov't Exec Ofc Bldg Utulei | Territory of American Samoa | Pago Pago | AS | 96799 |
| Attorney General Office of Guam | Douglas Moylan | Administrative Division | 590 S Marine Corps Dr Ste 901 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| PR Department of Justice | Domingo Emanuelli Hernández | PO Box 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Ariel K Smith | 3438 Kronprindsens Gade Ste 2 | GERS BLDG | St Thomas | VI | 00802 |

**CAFA Notice Service List**

**Email**

| Company | Contact Format | State |
|---|---|---|
| Office of the Attorney General for Nevada | All documents sent to NV AG at their dedicated CAFA email inbox. | NV |

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Merrick B. Garland | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

# **Attachment 2**

**CAFA NOTICE ADMINISTRATOR**
HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

August 10, 2023

**VIA UPS OR USPS CERTIFIED MAIL**

| Class Action Fairness Act – Notice to Federal and State Officials |
| :---: |

Dear Federal and State Officials:

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1715, please find enclosed information from Defendants The George Washington University and The Board of Trustees of George Washington University relating to the proposed settlement of a class action lawsuit.

- **Case:** *Shaffer, et al. v. The George Washington University, et al.*, Case No. 1:20-cv-01145-RJL.

- **Court:** United States District Court for the District of Columbia.

- **Defendants:** The George Washington University and the Board of Trustees of George Washington University.

- **Documents Enclosed**: In accordance with the requirements of 28 U.S.C. § 1715, please find copies of the following documents associated with this action on the enclosed CD:

  1. **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:** Class Action Complaint and Amended Complaints.

     a. Class Action Complaint (filed May 1, 2020) and related materials; and

     b. Consolidated Class Action Complaint (filed July 15, 2020) and related material.

  2. **Per 28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:** The Court has not scheduled a preliminary approval hearing or a final approval hearing or any other judicial hearing concerning the settlement agreement at this time.

  3. **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

     a. Claim Form *(Exhibit A to the Class Action Settlement Agreement)*;

     b. Settlement Election Form *(Exhibit B to the Class Action Settlement Agreement)*;

     c. Email Notice *(Exhibit C to the Class Action Settlement Agreement)*;

     d. Postcard Notice *(Exhibit D to the Class Action Settlement Agreement)*;

**CAFA NOTICE ADMINISTRATOR**
HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

  e.  Publication Notice *(Exhibit E to the Class Action Settlement Agreement)*; and

  f.  Long Form Notice *(Exhibit F to the Class Action Settlement Agreement)*.

4.  **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:**  The following documents are included:

- Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

- Class Action Settlement Agreement;

- Declaration of Daniel J. Kurowski in Support of Plaintiffs' Motion for Preliminary Approval;

  o  Hagens Berman Firm Resume *(Exhibit 1 to Declaration of Daniel J. Kurowski)*;

- Declaration of Cameron R. Azari, Esq. Regarding Settlement Notice Plan and Notices; and

- [Proposed] Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Representatives, Appointing Class Counsel, and Approval Notice Plan.

5.  **Per 28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreements:**  The parties signed a confidential Term Sheet, which is referenced in the settlement agreement and was not filed with the Court.  *See* 28 U.S.C. § 1715(b)(5). The term sheet has been superseded by the Settlement Agreement. There are no other Settlements or Agreements between the parties.

6.  **Per 28 U.S.C. § 1715(b)(6) – Final Judgment or Notice of Dismissal:**  To date, the Court has not issued a final order, judgment or dismissal in the above-referenced action.

7.  **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** A Geographic Analysis of potential Class Members is included on the enclosed CD.

8.  **Per 28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:**  To date, the Court has not issued a final order or judgment in the above-referenced action.

If you have questions or concerns about this notice or the enclosed materials, please contact this office.

Sincerely,

CAFA Notice Administrator

Enclosures

Attachment 2

Unique ID: ▮▮▮▮▮▮

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Shaffer et al. v. The George Washington University et al.*, Case No. 1:20-cv-01145-RJL
(United States District Court for the District of Columbia)

*For more information, visit www.GWSettlement.com.*

**PLEASE READ THIS NOTICE CAREFULLY. If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation from a class action settlement.** *This Notice explains your rights and options and the deadlines to exercise them.*

*The United States District Court for the District of Columbia authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

| WHY DID I GET THIS NOTICE? |
| --- |

- A settlement has been reached in a class action lawsuit between George Washington University ("Defendant" or "GW") and certain individuals who allege that they and the Settlement Class Members (Definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com) are entitled to partial refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is *Shaffer et al. v. The George Washington University et al.,* Case No. 1:20-cv-01145-RJL in the United States District Court for the District of Columbia (the "Lawsuit"). The proposed Settlement Agreement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit. The Court has granted Preliminary Approval of the Settlement Agreement and has conditionally certified the Settlement Class for purposes of settlement only. The settlement is subject to final approval by the Court, and a hearing is scheduled for April 2, 2024.

- You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees to any Released Party in connection with the Spring 2020 Semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class. You are not a Settlement Class Member if you opt out of the settlement, if you did not pay any tuition and fees for the Spring 2020 Semester—i.e. tuition and fees were paid for by institutional aid, tuition benefits, federal/state/local grants, GI/Yellow Ribbon benefits, outside scholarships, and/or third-party sponsorships—or if you or the Student on whose behalf you paid tuition and/or fees were enrolled in GW's entirely online or continuous enrollment programs at the start of the Spring 2020 Semester.

- Under the Settlement Agreement, GW will pay $5.4 million into a Settlement Fund. Some of that will go to Class Counsel for attorneys' fees and expenses if the Court awards them, some will go to Class Representatives as service awards, and some will pay for the costs of administering the settlement. What remains of the $5.4 million will be divided equally among the approximately 18,000 Students in the Settlement Class (who do not request to be excluded (opt out) of the settlement) and paid as a Cash Award. Students and Payors in the Settlement Class do not need to take any action for the Student to receive their shares of the payment. Students in the Settlement Class will automatically receive their share by check mailed to the Student's last known mailing address. Alternatively, if they prefer to receive their share by Venmo or PayPal, or need to update their mailing address for the mailing of a check, Settlement Class Members may visit the settlement website to complete an Election Form to

provide their Venmo or PayPal information or to update their mailing address. Any award will presumptively be paid to the Students in the Settlement Class. However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 Semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award. If a Student submits Non-Student Payor Payment Claim Form with multiple Payors, the Non-Student Payor Payment Claim Form will be rejected by the Settlement Administrator, and the Cash Award will be paid to the Student.

- Definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Students in the Settlement Class who do nothing automatically receive a payment by check to the Student's last known mailing address as reflected in GW's records after the Effective Date of the Settlement Agreement. Settlement Class Members give up any rights they may have to sue GW about the issues in this case. |
| **CHANGE YOUR PAYMENT OPTIONS** | Students in the Settlement Class may submit an Election Form (available on www.GWSettlement.com) to<br><br>(a) provide an updated mailing address for sending a check, or<br><br>(b) elect to receive the Cash Award by Venmo or PayPal instead of a paper check. Settlement Class Members may also submit this information to the Settlement Administrator by mail at the following address:<br><br>*Shaffer et al. v. George Washington University et al.*<br><br>c/o Settlement Administrator<br><br>P.O. Box 2178<br><br>Portland, OR 97208-2178<br><br>Alternatively, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 Semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.<br><br>The deadline to file a Non-Student Payor Payment Claim Form and/or Election Form is **March 11, 2024**. |
| **EXCLUDE YOURSELF** | Settlement Class Members may exclude themselves from the Settlement Class. They will not receive a Cash Award, but they will retain any rights they may have to sue GW about the issues in this case. The Exclusion Deadline is **March 11, 2024**. |
| **OBJECT** | Settlement Class Members may write to the Court explaining why they don't like the Settlement Agreement. If the Court approves the Settlement, an objecting Settlement Class Member will be |

| | bound by the Court's decision and the Settlement Agreement. The deadline to object to the settlement is **March 11, 2024.** |
|---|---|
| **ATTEND A HEARING** | Settlement Class Members may ask to speak in Court about the fairness of the settlement during the Final Approval Hearing on **April 2, 2024**. |

***These rights and options—and the deadlines to exercise them—are explained in this Notice. Please review this Notice carefully***.

The Court presiding over this case still has to decide whether to finally approve the settlement. The Cash Awards made available by this settlement will be provided only if the Court grants final approval to the settlement and after any issues with the settlement or appeals are resolved. Please be patient.

## WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit alleges that Students who attended GW during the Spring 2020 Semester are entitled to partial refunds of tuition and fees because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. GW denies each and every allegation of wrongdoing, liability, and damages asserted, and GW denies that the claims in the Lawsuit would be appropriate for class treatment if the litigation proceeded through trial.

The Plaintiffs' Complaint, the Settlement Agreement, and other case-related documents are available on the settlement website, accessible at www.GWSettlement.com.

## WHY IS THIS A CLASS ACTION?

A class action is a lawsuit in which one or more persons called a "Class Representative" sues on behalf of people with similar legal claims. These people together are a "Settlement Class" or "Settlement Class Members." The settlement, if finally approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

## WHY IS THERE A SETTLEMENT?

The Plaintiffs and GW have determined that it is in their best interests to settle to avoid the expenses and uncertainties associated with continued litigation. This settlement resolves all claims asserted in the case against GW and its affiliated persons and entities. The Plaintiffs and the attorneys for the Settlement Class believe the proposed settlement is in the best interests of the Settlement Class. The settlement is not an admission of wrongdoing by GW and does not imply that there has been, or would be, any finding that GW violated any law if the case were to move forward. GW denies each and every allegation of wrongdoing and liability in the Lawsuit. The Court did not reach a decision on the merits of the Lawsuit. The Court has preliminarily approved the settlement and ordered that this Notice be provided to explain it. Nevertheless, because the settlement of a class action determines the rights of all members of the Settlement Class, the Court must give final approval to the settlement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so Settlement Class Members receive this Notice and have the opportunity to exclude themselves from the Settlement Class or to voice their support for or opposition to final approval of the settlement. If the Court does not give final approval to the settlement, or if it is terminated by the Parties, the settlement will be void, and the Lawsuit will proceed as if there had been no settlement and no certification of the Settlement Class.

## WHO IS IN THE SETTLEMENT CLASS?

You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees to any Released Party in connection with the Spring 2020 Semester and whose tuition and/or fees have not been refunded in their entirety and who is not excluded from the Settlement Class. Excluded from the Settlement Class are:

(1) any Judge or Magistrate Judge presiding over this Action and members of their families;

(2) Defendant;

(3) Persons who properly execute and file a timely request for exclusion from the Settlement Class;

(4) the legal representatives, successors, or assigns of any such excluded persons;

(5) GW Students or Payors who did not pay any tuition or fees for the Spring 2020 Semester, i.e. tuition and fees were paid for by institutional aid, tuition benefits, federal/state/local grants, GI/Yellow Ribbon benefits, outside scholarships, and/or third-party sponsorships; and

(6) any Persons enrolled in Defendant's entirely online or continuous enrollment programs at the start of the Spring 2020 Semester.

## WHAT ARE MY OPTIONS?

**(1)   Receive Payment by Check or Elect to Have Your Payment Made Electronically.**

The $5.4 million Settlement Fund—minus any attorneys' fee the Court awards for Plaintiffs' Counsel (addressed below), service awards for the four named Plaintiffs of up to $10,000 each, and the costs of administering the settlement—will be divided equally among all Settlement Class Members. The Parties expect the payment to be approximately $193 per Student. Students will not need to take any action to receive their share of the Settlement Fund. Students in the Settlement Class will automatically receive their Cash Award by check mailed to the Student's last known mailing address as reflected in GW's records. Alternatively, if they prefer to receive their share by Venmo or PayPal, they may submit an Election Form available on the settlement website to provide their Venmo or PayPal information or they may provide that information to the Settlement Administrator by mail at the following address:

*Shaffer et al. v. George Washington University et al.*

c/o Settlement Administrator

P.O. Box 2178

Portland, OR 97208-2178

If any Settlement Class Members fail to cash their Cash Award checks, those monies from uncashed checks will be deposited in the GW Cares Student Assistance Fund for the purpose of providing additional student aid. A Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 Semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.

The Non-Student Payor Payment Claim Form does not need to be submitted in order for Students in the Settlement Class to automatically receive their Cash Award. They will receive their Cash Award by check mailed to the Student's last known mailing address as reflected in GW's records.

**(2)   Exclude Yourself From ("Opt Out" of) the Settlement.**

You may exclude yourself from the settlement. If you do so, you will not receive a Cash Award from the Settlement Fund. You will not release any claims you may have against GW and the Released Parties (as that term is defined in the Settlement Agreement, available for review at www.GWSettlement.com), and you will be able to pursue whatever legal rights you may have by pursuing your own lawsuit against GW and the Released Parties at your own risk and expense.

To exclude yourself from the settlement, you must mail a timely letter to the Settlement Administrator at the following address:

*Shaffer et al. v. George Washington University et al.*

c/o Settlement Administrator

P.O. Box 2178

Portland, OR 97208-2178

The exclusion letter must be postmarked by **March 11, 2024**. Your request to be excluded from the settlement must include the following:

- Your name and address;
- A statement that you want to be excluded from the Settlement Class for purposes of this settlement in *Shaffer et al. v. George Washington University et al.*, Case No. 1:20-cv-01145-RJL in the United States District Court for the District of Columbia; and
- Your signature. If a Payor paid tuition and/or fees for the Spring 2020 Semester in respect of any Student, both the Payor and the Student must sign the exclusion request in order for it to be valid. For a Student as to whom there is no Payor, only the Student is required to sign the exclusion request in order for it to be valid.

You cannot ask to be excluded by phone or on the settlement website. You may opt out of the Settlement Class only for yourself; one may not purport to opt others out of the Settlement Class on a class or representative basis. "Mass" or "class" opt-outs will not be allowed. A valid exclusion request signed by both the Payor and the Student has the effect of excluding both the Payor and the Student from the Settlement Class. In that case, no Person shall be paid a Cash Award in respect of the Student.

   **(3)   Object to the Settlement**.

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement Agreement. You can ask the Court to deny approval of the proposed settlement by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, the benefits for Settlement Class Members described herein will not be provided, and the Lawsuit will continue.

To object, you must file your objection in writing with the Court by **March 11, 2024**. Your objection must include the following:

- Your name and address;
- An explanation of the basis upon which you claim to be a Settlement Class Member;
- All grounds for the objection, including all citations to legal authority and evidence supporting the objection;
- The name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys");
- A statement indicating whether you intend to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); and
- If you or any of the Objecting Attorneys have objected to any class action settlement where you or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

"Mass" or "class" objections will not be allowed.

**If you do not timely and validly make your objection, you will be deemed to have waived all objections and will not be entitled to speak at the Final Approval Hearing.**

If you file and serve a written objection and statement of intent to appear, you may appear at the Final Approval Hearing, either in person or through your personal counsel hired at your

own expense, to object to the fairness, reasonableness, or adequacy of the settlement.

If you wish to object, you must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) no later than **March 11, 2024**. You must also send a copy of your objection by mail, hand, or overnight delivery service or by operation of the Court's CM/ECF system to the attorneys representing the Plaintiffs and the Settlement Class (specifically Steve W. Berman, Daniel J. Kurowski, and Whitney K. Siehl of Hagens Berman Sobol Shapiro LLP, 455 N. Cityfront Plaza Drive, Suite 2410, Chicago, IL 60611) and the attorneys representing GW (Alan E. Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007), postmarked no later than **March 11, 2024**.

If you hire an attorney in connection with making an objection, that attorney must also file with the Court a notice of appearance by **March 12, 2024**. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the settlement, you cannot file an objection. If you object and the settlement is approved, you will still be entitled to receive benefits under the settlement, and you will be bound by the terms of the settlement.

## WHAT COMPENSATION WILL CLASS COUNSEL AND THE NAMED PLAINTIFFS RECEIVE?

*Class Representative Compensation*. The Court may award reasonable service compensation to the Class Representatives for their service in the case, not to exceed Ten Thousand Dollars ($10,000) each, which shall come from the Settlement Fund. Any such Court-ordered compensation shall be paid within twenty-one (21) business days after the Effective Date. This shall be in addition to any Cash Award that the Class Representatives may receive as Settlement Class Members.

*Class Counsel Attorneys' Fees, Costs, and Expenses*. The attorneys who brought the Lawsuit (listed below) will ask the Court to award them attorneys' fees, costs, and expenses not to exceed thirty-three percent (33%) of the Settlement Fund ($1,782,000) for the time, expense and effort expended in investigating the facts, conducting the litigation, and negotiating the settlement. Class Counsel's motion for attorneys' fees, costs and expenses and Class Representative awards will be filed with the Court and made available on the settlement website no later than **February 24, 2024**. The Fee Award shall be payable by the Settlement Administrator from the Settlement Fund within twenty-one (21) business days after the Effective Date.

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?

Unless you exclude yourself from the settlement, you cannot sue or be part of any other lawsuit against GW or the Released Parties about the issues in this case. This specifically includes any claim for breach of contract or any tort, common law, or statutory claim arising out of or in any way allegedly related to GW tuition, fees, and/or costs paid or incurred by or on behalf of any Settlement Class Member in connection with the Spring 2020 Semester. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.GWSettlement.com.

*The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully.*

If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer of your choosing at your own expense.

## WHEN WILL I RECEIVE MY CASH AWARD?

Cash Awards will be distributed after the Court grants final approval to the settlement. The Parties cannot accurately predict when (or whether) the Court will grant final approval to the

settlement, or whether there may be appeals from that order that take additional time to resolve, so please be patient. After the Court grants final approval to the settlement, and after any appeals are resolved, Cash Awards will be paid within 60 days.

Updated information about the case will be made available at www.GWSettlement.com, or you can call the Settlement Administrator toll-free at 1-888-302-6048 or contact Class Counsel at the information provided below.

## WHEN WILL THE COURT RULE ON THE SETTLEMENT?

The Court has already granted Preliminary Approval of the settlement. A final hearing on the Settlement Agreement, called a final approval or fairness hearing, will be held to determine the fairness of the settlement. At the Final Approval Hearing, the Court will also consider whether to make Final the certification of the Settlement Class for settlement purposes, hear any proper objections to and arguments against the settlement, and hear any requests for an award of attorneys' fees and expenses and Service Awards for the Plaintiffs that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024**, at **3:00 PM ET**, at the U.S. District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com, and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

If the settlement is given final approval, the Court will not make any determination as to the merits of the claims or defenses at issue. Instead, the settlement's terms will take effect and the Lawsuit will be dismissed on the merits with prejudice. Both sides have agreed to the settlement to achieve an early and certain resolution to the Lawsuit, so it provides specific and valuable benefits to the members of the Settlement Class.

If the Court does not grant final approval of the settlement, or if final approval is reversed on appeal, or if the settlement does not become Final for some other reason, Plaintiffs, GW, and Settlement Class Members will be in the same position as they were before the execution of the settlement, and the settlement will have no legal effect, no class will remain certified (conditionally or otherwise), and Plaintiffs and GW will continue to litigate the Lawsuit. There can be no assurance that, if the settlement is not approved, the Settlement Class will recover more than is provided in the settlement, or indeed, anything at all.

## WHO REPRESENTS THE CLASS?

The Court has approved the following attorneys to represent the Settlement Class. They are called "Class Counsel."

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Steve W. Berman, Esq.

Daniel J. Kurowski, Esq.

Whitney K. Siehl, Esq.

Hagens Berman Sobol Shapiro LLP

455 N. Cityfront Plaza Drive, Suite 2410

Chicago, IL 60611

T: (708) 628-4949

steve@hbsslaw.com

dank@hbsslaw.com

whitneys@hbsslaw.com

## WHERE CAN I GET ADDITIONAL INFORMATION?

This Notice is only a summary of the proposed Settlement Agreement. More details are in the Settlement Agreement which, along with other documents, can be obtained at

www.GWSettlement.com. If you have any questions, you can also call the Settlement Administrator at 1-888-302-6048 or Class Counsel at the number or email addresses set forth above. Besides the documents available on the case website, all pleadings and documents filed in court may be reviewed or copied in the Office of the Clerk.

**_Please do <u>not</u> contact the Judge or the Clerk of the Court or George Washington University about this case. They cannot give you advice on your options_**.

**QUESTIONS? VISIT www.GWSettlement.com.**

AJ640_v04

Copyright © 2023 Shaffer v. George Washington University
Our address is P.O. Box 2178, Portland, OR 97208-2178, Portland, OR 97208-2178

If you do not wish to receive future email, click here.
(You can also send your request to **Customer Care** at the street address above.)

Attachment 3

*Shaffer et al. v. The George Washington University et al.*
Settlement Administrator
P.O. Box 2178
Portland, OR 97208-2178



UniqueID: ▮▮▮▮▮

January 9, 2024

## GW SETTLEMENT

A settlement has been reached in a class action lawsuit between George Washington University ("Defendant" or "GW") and certain individuals who allege that they and the Settlement Class Members are entitled to <u>partial</u> refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is S*haffer et al. v. The George Washington University et al.*, Case No. 1:20-cv-01145-RJL, in the United States District Court for the District of Columbia (the "Lawsuit"). The proposed settlement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit.

**Am I a Class Member?** According to GW's records, you may be a Settlement Class Member. You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees to any Released Party in connection with the Spring 2020 Semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class.

**What Can I Get?** If approved by the Court, a Settlement Fund of $5,400,000 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and service awards. What remains of the $5,400,000 will be divided equally among the approximately 18,000 Students in the Settlement Class.

**How Do I Get a Payment?** Students in the Settlement Class will not need take any action to receive their shares of the payment. Students in the Settlement Class will automatically receive their shares by check mailed to the Student's last known mailing address. Alternatively, if they prefer to receive their share by Venmo or PayPal, or need to update their mailing address for the mailing of a check, they may visit the settlement website to complete an Election Form to provide their Venmo or PayPal information or update their mailing address. Any award will presumptively be paid to the Students in the Settlement Class. However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 Semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.

**What Are My Other Options?** You may exclude yourself from the Settlement Class by sending a letter to the Settlement Administrator no later than **March 11, 2024**. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the Lawsuit. If you do not exclude yourself, you may object to the settlement if you choose to do so. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed with the Court no later than **March 11, 2024**. Specific instructions about how to object to, or exclude yourself from, the settlement are available at www.GWSettlement.com. If you do nothing and the Court approves the settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to causes of action asserted in this case or which could have been brought in this case based upon the facts alleged regarding the Spring 2020 Semester will be released. "Mass" or "class" objections or opt opts will not be allowed.

**Who Represents Me?** The Court has appointed Hagens Berman Sobol Shapiro LLP to represent the Settlement Class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court has already granted Preliminary Approval of the settlement. A final hearing on the settlement, called a final approval or fairness hearing, will be held to determine the fairness of the settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes, hear any proper objections and arguments to the settlement, and hear any requests for an award of attorneys' fees and expenses (not to exceed 33% of the total Settlement Fund) and Service Awards for the Plaintiffs (not to exceed $10,000 each) that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024**, at **3:00 p.m. ET** at the United States District Court for the District of Columbia, 333 Constitution Ave. N.W., Washington D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com, and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

**How Do I Get More Information?** For more information, including a more detailed Notice, Claim Form, a copy of the Settlement Agreement, and other documents, go to www.GWSettlement.com, contact the Settlement Administrator at 1-888-302-6048, or write to the Settlement Administrator at *Shaffer et al. v. The George Washington University et al.*, c/o Settlement Administrator, P.O. Box 2178, Portland, OR 97208-2178, or call Class Counsel at 1-708-628-4949.

Attachment 4

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Shaffer et al. v. George Washington University et al.,* Case No. 1:20-cv-01145-RJL
(United States District Court for the District of Columbia)

**PLEASE READ THIS NOTICE CAREFULLY. If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester, and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation from a class action settlement.** *This notice explains your rights and options and the deadlines to exercise them.*

*The United States District Court for the District of Columbia authorized this Notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

| 1. Why did I get this Notice? |
|---|

•  A Settlement has been reached in a class action lawsuit between Defendant George Washington University et al. ("Defendant" or "GW") and certain individuals who have alleged that they, and the Settlement Class Members,[1] are entitled to <u>partial</u> refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is *Shaffer et al. v. George Washington University, et al.*, Case No. 1:20-cv-01145-RJL, in the United States District Court for the District of Columbia (the "Lawsuit"). The proposed Settlement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit. The Court has granted preliminary approval of the Settlement and has conditionally certified the Settlement Class for purposes of settlement only. The settlement is subject to final approval by the court, and a hearing is scheduled for April 2, 2024.

•  You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees, to any Released Party, in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class. But, you are not a Settlement Class Member if you opt out of the Settlement, if you did not pay any tuition and fees for the Spring 2020 Semester, i.e. tuition and fees were paid for by institutional aid, tuition benefits, federal/state/local grants, GI/Yellow Ribbon benefits, outside scholarships, and/or third-party sponsorships, or if you or the Student on whose behalf you paid tuition and/or fees were enrolled in GW's entirely online or continuous enrollment programs at the start of the Spring 2020 semester.

•  Under the Settlement Agreement, GW will pay $5.4 million into a Settlement Fund. Some of that will go to Class Counsel for attorneys' fees and expenses if the court awards them, some will go to class representatives as service awards, and some will pay for the costs of administering the settlement. What remains of the $5.4 million will be divided equally among the approximately 18,000 Students in the Settlement Class (who do not request to be excluded (opt-out) of the Settlement) and paid as a Cash Award. Students in the Settlement Class do not need to take any action for the Student to receive their shares of the payment.  Students in the Settlement Class will automatically receive their shares by check mailed to the Student's last known mailing address.  Alternatively, if they prefer to receive their share by Venmo or PayPal, or update their mailing address for mailing of a check, Settlement Class Members may visit the settlement website to complete an Election Form to provide

---

[1] Definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com.

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

AJ6511 v.04

their Venmo or PayPal information, or to update their mailing address. Any award will presumptively be paid to the Students in the Settlement Class.  However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly filed Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor.  In that instance, the Student will not receive a Cash Award. If a Student submits Payor Payment Claim Forms with multiple Payors, the Payor Payment Claim Forms will be rejected by the Settlement Administrator, and the Cash Award will be paid to the Student.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Students in the Settlement Class who do nothing automatically receive a payment by check to the Student's last known mailing address as reflected in GW's records after the Effective Date of the Settlement Agreement. You will give up any rights you may have to sue GW about the issues in this case. |
| **CHANGE YOUR PAYMENT OPTIONS** | Students in the Settlement Class may visit www.GWSettlement.com to (a) provide an updated mailing address for sending a check or (b) elect to receive the Cash Award by Venmo or PayPal instead of a paper check. Settlement Class Members may also submit this information to the Settlement Administrator by mail at P.O. Box 2178, Portland, OR 97208-2178. Alternatively, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly filed Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor.  In that instance, the Student will not receive a Cash Award.  The deadline to change your payment options is **March 11, 2024.** |
| **EXCLUDE YOURSELF** | You will not receive your Cash Award, but you will retain any rights you may have to sue GW about the issues in this case.  The deadline to exclude yourself is **March 11, 2024**. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. If the Court approves the Settlement, you will be bound by the Court's decision and the Settlement Agreement. The deadline to object to the settlement is **March 11, 2024**. |
| **ATTEND A HEARING** | Ask to speak in Court about the fairness of the Settlement during the Final Approval Hearing on **April 2, 2024**. |

*These rights and options—and the deadlines to exercise them—are explained in this Notice. Please review this Notice carefully*.

The Court presiding over this case still has to decide whether to approve the Settlement. The Cash Awards made available by this Settlement will be provided only if the Court approves the Settlement and after any issues with the Settlement or appeals are resolved. Please be patient.

## 2.  What is this Lawsuit about?

The lawsuit alleges that Students who attended GW during the Spring 2020 semester are entitled to partial refunds of tuition and fees because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. GW denies each

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

2

AJ6512 v.04

and every allegation of wrongdoing, liability, and damages asserted, and GW denies that the claims in the Lawsuit would be appropriate for class treatment if the litigation proceeded through trial.

The Plaintiffs' Complaint, the Settlement Agreement, and other case-related documents are available on the Settlement Website, accessible at www.GWSettlement.com.

### 3. Why is this a Class Action?

A class action is a lawsuit in which one or more persons called a "Class Representative" sues on behalf of people with similar legal claims. These people together are a "Settlement Class" or "Settlement Class Members." The Settlement, if finally approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

### 4. Why is there a Settlement?

The Plaintiffs and GW have determined that it is in their best interests to settle to avoid the expenses and uncertainties associated with continued litigation. This Settlement resolves all claims asserted in the case against GW and its affiliated persons and entities. The Plaintiffs and the attorneys for the Settlement Class believe the proposed settlement is in the best interests of the Class. The Settlement is not an admission of wrongdoing by GW and does not imply that there has been, or would be, any finding that GW violated any law if the case were to move forward. GW denies each and every allegation of wrongdoing and liability in the Lawsuit. The Court did not reach a decision on the merits of the Lawsuit. The Court has preliminarily approved the Settlement and ordered that this Notice be provided to explain it. Nevertheless, because the settlement of a class action determines the rights of all members of the class, the Court must give final approval to the Settlement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so that Settlement Class Members receive this Notice and have the opportunity to exclude themselves from the Settlement Class or to voice their support for or opposition to final approval of the Settlement. If the Court does not give final approval to the Settlement, or if it is terminated by the Parties, the Settlement will be void, and the Lawsuit will proceed as if there had been no settlement and no certification of the Settlement Class.

### 5. Who is in the Settlement Class?

You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees, to any Released Party, in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety. Excluded from the Settlement Class are:

(1) any Judge or Magistrate Judge presiding over this Action and members of their families;

(2) the Defendant;

(3) persons who properly execute and file a timely request for exclusion from the class;

(4) the legal representatives, successors or assigns of any such excluded persons; and

(5) GW Students or Payors who did not pay any tuition or fees for the Spring 2020 Semester, i.e. tuition and fees were paid for by institutional aid, tuition benefits, federal/state/local grants, GI/Yellow Ribbon benefits, outside scholarships, and/or third-party sponsorships; and

(6) any persons enrolled in Defendant's entirely online or continuous enrollment programs at the start of the Spring 2020 Semester.

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

AJ6513 v.04

## 6.  What are my Options?

**(1)    Receive Payment by Check or Elect to Have Your Payment Made Electronically.**

The $5.4 million Settlement Fund, minus any attorneys' fee the court awards for Plaintiffs' counsel (addressed below), service awards for the four named Plaintiffs of up to $10,000 each, and the costs of administering the settlement, will be divided equally among all Settlement Class Members. The parties expect the payment to be approximately **$193** per Student. Students will not need to take any action to receive their share of the settlement. Students in the Settlement Class will automatically receive their Cash Award by check mailed to the Student's last known mailing address as reflected in GW's records.  Alternatively, if they prefer to receive their share by Venmo or PayPal, they may visit the settlement website to provide their Venmo or PayPal information, or may provide that information to the Settlement Administrator by mail at the address below. If any Settlement Class Members fail to cash their Cash Award checks, those monies from uncashed checks will be deposited in the GW Cares Student Assistance Fund for the purpose of providing additional student aid.  A Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly filed Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor.  In that instance, the Student will not receive a Cash Award.

**(2)    Exclude Yourself ("Opt out" of the Settlement)**.

You may exclude yourself from the Settlement. If you do so, you will not receive a Cash Award from the Settlement Fund. You will not release any claims you may have against GW and the Released Parties (as that term is defined in the Settlement Agreement, available for review at www.GWSettlement.com), and you will be able to pursue whatever legal rights you may have by pursuing your own lawsuit against GW and the Released Parties at your own risk and expense.

To exclude yourself from the Settlement, you must mail a timely letter to the Settlement Administrator at P.O. Box 2178, Portland, OR 97208-2178, postmarked by **March 11, 2024**. Your request to be excluded from the Settlement must include the following:

- Your name and address;
- A statement that you want to be excluded from the Settlement Class for purposes of this Settlement in *Shaffer et al. v. George Washington University,* Case No. 1:20-cv-01145-RJL, in the United States District Court for the District of Columbia; and

If a Payor paid tuition and/or fees for the Spring 2020 semester in respect of any Student, both the Payor and the Student must sign the exclusion request in order for it to be valid.  For a Student as to whom there is no Payor, only the Student is required to sign the exclusion request in order for it to be valid.  You cannot ask to be excluded by phone or on the Settlement Website. You may opt out of the Settlement Class only for yourself; one may not purport to opt others out of the Settlement Class on a class or representative basis. "Mass" or "class" opt-outs will not be allowed. A valid exclusion request signed by both the Payor and the Student has the effect of excluding both the Payor and the Student from the Settlement Class.  In that case, no Person shall be paid a Cash Award in respect of the Student

**(3)    Object to the Settlement**.

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. You can ask the Court to deny approval of the proposed settlement by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, the benefits for Settlement Class Members described herein will not be provided, and the Lawsuit will continue.

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

AJ6514 v.04

To object, you must file your objection with the Court by **March 11, 2024**.  Your objection must include the following:

- Your name and address;
- An explanation of the basis upon which you claim to be a Settlement Class Member;
- All grounds for the objection, including all citations to legal authority and evidence supporting the objection;
- The name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys");
- A statement indicating whether you intend to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); And
- If you or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

"Mass" or "class" objections will not be allowed.

**If you do not timely and validly make your objection, you will be deemed to have waived all objections and will not be entitled to speak at the Final Approval Hearing.**

If you file and serve a written objection and statement of intent to appear, you may appear at the Final Approval Hearing, either in person or through your personal counsel hired at your own expense, to object to the fairness, reasonableness, or adequacy of the Settlement.

If you wish to object, you must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) no later than **March 11, 2024**.  You must also send a copy of your objection by mail, hand, or overnight delivery service (or by operation of the Court's CM/ECF system to the attorneys representing the Plaintiffs and the Settlement Class (specifically Steve W. Berman, Daniel J. Kurowski, and Whitney K. Siehl of Hagens Berman Sobol Shapiro LLP, 455 N. Cityfront Plaza Drive, Suite 2410, Chicago, IL 60611) and the attorneys representing GW (Alan E. Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007), postmarked no later than **March 11, 2024**.

If you hire an attorney in connection with making an objection, that attorney must also file with the Court a notice of appearance by **March 12, 2024**. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the Settlement, you cannot file an objection. If you object and the Settlement is approved, you will still be entitled to receive benefits under the Settlement and will be bound by the terms of the Settlement.

## 7.  Compensation to Class Counsel and the Named Plaintiffs.

*Class Representative Compensation*. The Court may award reasonable service compensation to the Class Representatives for their service in the case, not to exceed Ten Thousand Dollars ($10,000) each, which shall come from the Settlement Fund. Any such Court-ordered compensation shall be paid within twenty-one (21) business days after the Effective Date. This shall be in addition to any Cash Award that the Class Representatives may receive as Settlement Class Members.

*Class Counsel Attorneys' Fees, Costs, and Expenses*. The attorneys who brought the lawsuit (listed below) will ask the Court to award them attorneys' fees, costs, and expenses not to exceed thirty-

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

three percent (33%) of the Settlement Fund ($1,782,000), for the time, expense and effort expended in investigating the facts, conducting the litigation, and negotiating the Settlement. Class Counsel's motion for attorneys' fees, costs and expenses and Class Representative awards will be filed with the Court and made available on the Settlement website no later than February 24, 2024. The Fee Award shall be payable by the Settlement Administrator from the Settlement Fund within twenty-one (21) business days after the Effective Date.

## 8.  What Rights am I giving up in this Settlement?

Unless you exclude yourself from the Settlement, you cannot sue or be part of any other lawsuit against GW or the Released Parties about the issues in this case. This specifically includes any claim for breach of contract or any tort, common law or statutory claim arising out of or in any way allegedly related to GW tuition, fees and/or costs paid or incurred by or on behalf of any Settlement Class Member in connection with the Spring 2020 Semester. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.GWSettlement.com. *The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully.* If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer of your choosing at your own expense.

## 9.  When will I receive my Cash Payment?

Cash Awards will be distributed after the Court grants Final Approval to the Settlement. The parties cannot accurately predict when (or whether) the Court will grant Final Approval to the Settlement, or whether there may be appeals from that order that take additional time to resolve, so please be patient. After the Court grants Final Approval to the Settlement, and after any appeals are resolved, Cash Awards will be paid within 60 days.

Updated information about the case will be made available at www.GWSettlement.com, or you can call the Settlement Administrator toll-free at 1-888-302-6048, or contact Class Counsel at the information provided below.

## 10. When will the Court rule on the Settlement?

The Court has already granted Preliminary Approval of the Settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the Settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes, hear any proper objections and arguments to the Settlement, as well as any requests for an award of attorneys' fees and expenses and Service Awards for the Plaintiffs that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024, at 3:00 p.m. ET**, at the U.S. District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington, D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com, and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

If the Settlement is given Final Approval, the Court will not make any determination as to the merits of the claims or defenses at issue. Instead, the Settlement's terms will take effect and the Lawsuit will

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

6

AJ6516 v.04

be dismissed on the merits with prejudice. Both sides have agreed to the Settlement to achieve an early and certain resolution to the Lawsuit, so it provides specific and valuable benefits to the members of the Settlement Class.

If the Court does not grant Final Approval of the Settlement, or if Final Approval is reversed on appeal, or if the Settlement does not become final for some other reason, Plaintiffs, GW, and Class Members will be in the same position as they were before the execution of the Settlement, and the Settlement will have no legal effect, no class will remain certified (conditionally or otherwise), and Plaintiffs and GW will continue to litigate the lawsuit. There can be no assurance that, if the Settlement is not approved, the Settlement Class will recover more than is provided in the Settlement, or indeed, anything at all.

## 11. Where can I get additional information?

This Notice is only a summary of the proposed Settlement. More details are in the Settlement Agreement which, along with other documents, can be obtained at www.GWSettlement.com.  If you have any questions, you can also call the Settlement Administrator at 1-888-302-6048 or Class Counsel at the numbers or email addresses set forth below. Besides the documents available on the case website, all pleadings and documents filed in court may be reviewed or copied in the Office of the Clerk.

***Please do not contact the Judge or the Clerk of the Court or George Washington University about this case. They cannot give you advice on your options***.

## 12. Who represents The Class?

The Court has approved these attorneys to represent the Settlement Class. They are called "Class Counsel."

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Steve W. Berman, Esq.
Daniel J. Kurowski, Esq.
Whitney K. Siehl, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
T: (708) 628-4949
*steve@hbsslaw.com*
*dank@hbsslaw.com*
*whitneys@hbsslaw.com*

**Questions?  Call 1-888-302-6048 or visit www.GWSettlement.com.**

7

AJ6517 v.04

Attachment 5

<u>George Washington University Settlement Election Form</u>

Please complete this form by **March 11, 2024** if you wish to (i) receive your share of the Settlement by Venmo or PayPal or (ii) update your mailing address to receive a check by First-Class Mail.

You are not required to complete this form in order to receive a payment. If you do not complete this form by **March 11, 2024**, you will receive your share of the Settlement Fund in the form of a check sent to your last-known mailing address.

## <u>REGISTRATION</u>

**1. NAME (Required):**

First Name                                                         MI        Last Name

**2. MAILING ADDRESS (Required):**

Street Address

Apt. No.

City                                                                           State     ZIP Code

**3. EMAIL ADDRESS:**

**4. UNIQUE ID (Please provide the Unique ID from the Notice that was sent to you.):**

☐  **OPTION ONE: RECEIVE CASH PAYMENT BY VENMO OR PAYPAL**

☐    **VENMO**

VENMO USERNAME:

☐    **PAYPAL**

PAYPAL EMAIL ADDRESS:

01-CA40067249
AJ6531 v.03

☐ **OPTION TWO: RECEIVE CASH PAYMENT BY CHECK AT NEW ADDRESS**

☐ **CHECK**

STREET ADDRESS

APT NO.

CITY                                                                    STATE    ZIP CODE

Signature: [                    ]          Date: [  ] – [  ] – [    ]
                                                   MM      DD      YYYY

02-CA40067249
AJ6532 v.03

Attachment 6



*400672499999999991*

## George Washington University Settlement
## Non-Student Payor Payment Claim Form

Under the Settlement, an eligible George Washington University Student and a Payor may communicate to the Settlement Administrator via a jointly filed Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Settlement Administrator will pay the Cash Award to the Payor and not the Student. Upon submission of the Claim Form, neither the Student nor any other Payor who made payments of tuition and/or fees on the Student's behalf for the Spring 2020 Semester will have a claim to a Cash Award. If a Student submits Claim Forms with multiple Payors, the Claim Forms will be rejected by the Settlement Administrator, and the Cash Award will be paid to the Student. Use this Claim Form if you would like to direct the Settlement Administrator to issue the Cash Award to a Payor. You must submit this form by **March 11, 2024** to be timely submitted and considered by the Settlement Administrator.

## REGISTRATION

**UNIQUE ID (Please provide the Unique ID from the Notice that was sent to you.):**

## STEP ONE: IDENTIFY THE STUDENT

**STUDENT NAME (Required):**

First Name                 MI   Last Name

**STUDENT MAILING ADDRESS (Required):**

Street Address

Apt. No.

City                                        State   ZIP Code

**STUDENT PHONE NUMBER:**

**STUDENT EMAIL ADDRESS:**

## STEP TWO: IDENTIFY THE PAYOR WHO SHOULD RECEIVE THE CASH AWARD INSTEAD OF THE STUDENT

**PAYOR NAME (Required):**

First Name                 MI   Last Name

**PAYOR MAILING ADDRESS (Required):**

Street Address

Apt. No.

City                                        State   ZIP Code

01-CA40067249
AJ6521 v.03

*400672499999999991*

**PAYOR PHONE NUMBER:**

```
[ ][ ][ ] – [ ][ ][ ] – [ ][ ][ ][ ]
```

**PAYOR EMAIL ADDRESS:**

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
```

**STEP THREE: SELECT A PAYMENT OPTION FOR PAYMENT OF THE CASH AWARD TO THE PAYOR**

[ ] **OPTION ONE: RECEIVE CASH PAYMENT BY VENMO OR PAYPAL**

    [ ] **VENMO**

VENMO USERNAME:

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
```

    [ ] **PAYPAL**

PAYPAL EMAIL ADDRESS:

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
```

[ ] **OPTION TWO: RECEIVE CASH PAYMENT BY CHECK AT NEW ADDRESS**

    [ ] **CHECK**

STREET ADDRESS

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
```

APT NO.

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
```

CITY                                                              STATE    ZIP CODE

```
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]    [ ][ ]    [ ][ ][ ][ ][ ]
```

**STEP FOUR: STUDENT AND PAYOR MUST BOTH SIGN AND DATE THIS CLAIM FORM**

```
[                              ]   Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]
```
**STUDENT SIGNATURE**              MM      DD       YYYY

```
[                              ]   Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]
```
**PAYOR SIGNATURE**               MM      DD       YYYY

Attachment 7

## AVIATION

# Loose Bolts in Boeing Jets and Repeated Warnings on Cabin Pressure

FROM FIRST BUSINESS PAGE

in the side of the plane and fell across the city.

Airlines have canceled hundreds of flights as they prepare to inspect nearly 200 aircraft that will be grounded until regulators and company officials decide they are safe. Alaska Airlines used 65 Max 9 planes, about 20 percent of its fleet, and United uses 79, more than any other airline and about 8 percent of its fleet, according to Cirium, an aviation data provider. Some passengers' travel plans could be disrupted for days.

The Federal Aviation Administration sent instructions to the airlines on Monday on how to carry out the inspections, although Alaska and United said they were waiting on additional approval from the F.A.A. to begin.

Officials led by the National Transportation Safety Board are focusing on, among other things, the installation and inspection of the plug.

"I think investigators are going to be focused on the manufacturing process of this particular airplane," said Jeff Guzzetti, a former investigator for the N.T.S.B. and the F.A.A. "How was this door plug installed or who installed it?"

The door was initially installed by Spirit AeroSystems, which makes the body for the 737 Max and other aircraft. Investigators said they were looking into whether work had been done on or near the door since the plane entered service in November.

Jennifer Homendy, the chairwoman of the N.T.S.B., said investigators had a great deal of work to do, including inspecting the plug, which was recovered from a backyard near Portland. The board will also examine a plug that remained intact on the other side of the plane, interview flight crews and passengers, review maintenance records and repair logs, and conduct laboratory analyses of parts from the plane.

Investigators are also likely to look into whether the installation of wireless internet equipment on



Investigators examining the Boeing 747 Max 9 that blew a plug. Alaska Airlines had been warned three times about problems with cabin pressure on the jet.

NATIONAL TRANSPORTATION SAFETY BOARD, VIA AGENCE FRANCE-PRESSE

the plane by a contractor, AAR, between Nov. 27 and Dec. 7 played any part in the pressurization problems, which emerged after that work was complete. In a statement, AAR said on Monday that it "did not perform any work on or near any midcabin exit door plug of that specific aircraft."

While no serious injuries were reported, the accident could have been far more catastrophic, especially if the plane had been at a higher altitude, experts said. Ms. Homendy said that the passengers had included three babies and four unaccompanied children between the ages of 5 and 17.

Ms. Homendy said on Monday that her team was reviewing the plane's flight data recorder to try to determine if the pressurization warning light can be linked to the door plug. The plane has several backup systems in case one of the pressurization systems fails.

"There may have been something wrong with either the light or that one other unit, but there's redundancies in the system," Ms. Homendy said.

Anthony Brickhouse, a professor of aerospace safety at Embry-Riddle Aeronautical University, said a blowout at more than 30,000 feet could have been disastrous.

"We could have been looking at a situation where more of the structure could have come off and would have been looking at a situation where passengers who weren't strapped in properly would have been blown out because the forces would have been so tremendous," he said.

Pressurization starts to affect most commercial planes around 8,000 feet, said Mr. Brickhouse, who previously investigated aviation accidents for the safety board. Not properly controlling the air entering and leaving the cabin can lead to altitude sickness, or hypoxia, for the passengers and crew.

Hypoxia, a condition that develops when the brain is deprived of oxygen, can happen on planes without appropriate pressurization when they begin flying above 10,000 feet or suffer rapid decompression, the F.A.A. says. This is why flight attendants tell passengers to use drop-down masks in the event of rapid decompression, Mr. Brickhouse said.

In a statement, the F.A.A. said the required inspections would concentrate on the plugs, door components and fasteners.

"Our teams have been working diligently — with thorough F.A.A. review — to provide comprehen-

sive, technical instructions to operators for the required inspections," Stan Deal, the chief executive of Boeing's commercial plane unit, and Mike Delaney, the chief aerospace safety officer, said in a message to employees of that unit.

Other airlines with Max 9 planes are outside the United States, such as Copa Airlines of Panama, Turkish Airlines and Icelandair. The European Union's aviation safety agency announced on Monday that the Max 9 jets operating in Europe were not grounded because they had a different configuration.

The F.A.A. previously said it would take four to eight hours to inspect each plane. Inspecting the nearly 200 planes in the United States, according to the aviation agency, could take a few days.

Aviation regulators and Boeing said the inspections were unique to the Max 9 and not other versions of the jet. The Max 9, along with the more popular Max 8, was grounded for nearly two years after two crashes of the Max 8 in 2018 and 2019 killed 346 people.

Federal authorities investigating the incident are also looking into what set off pressurization warnings on the damaged plane during three recent flights. Alaska Airlines workers reset the system and the plane was put back into service, though the airline restricted it from being used on flights to destinations like Hawaii, Ms. Homendy said. She added that it was not yet clear if the warnings were related to the accident on Friday.

In a statement, Alaska said it could not answer many outstanding questions about the plane and what had led to the blowout without approval from the safety board. The airline said it had asked the N.T.S.B. to share more information and would do so if allowed. In such investigations, parties are typically restricted in what they can share publicly.

_J. Edward Moreno contributed reporting._

## Passengers Aboard Flight Describe Scenes of Terror

**By COLBI EDMONDS and REBECCA CARBALLO**

It felt like an explosion. Then the plane rattled, the oxygen masks dropped, and the lights flickered. A white vapor whipped through the cabin. Some people yelled. Others were disoriented.

So began the harrowing minutes aboard Alaska Airlines Flight 1282, when a door-sized section near the rear of the plane blew off 10 minutes after it took off from Portland, Ore., on Friday night, leaving some passengers initially confused, and others utterly terrified.

"The first thing I thought was, 'I'm going to die,'" said Vi Nguyen, 22, a passenger from Portland.

Nicholas Hoch, 33, was sitting in 12A, a window seat near the front of the Boeing 737 Max 9. He tried to stay calm. Still, he began typing out texts to his mother and girlfriend. There was something wrong on the plane, he told them, adding, "I love you guys."

The flight, carrying 171 passengers and six crew members, began in ordinary fashion. Headed for Ontario, Calif., it was initially delayed by about 20 minutes to allow for de-icing, said Mr. Hoch, an architect, who was flying to visit his girlfriend's family.

He spent the delay getting into his preflight comfort zone, putting on his noise-canceling headphones and listening to a podcast about Tokyo, ahead of his trip to Japan in a couple of days.

At 5:07 p.m., Flight 1282 departed Portland, according to FlightAware, a flight tracking website. It climbed to about 16,000 feet, traveling roughly 440 miles per hour.

Then came the boom. Others, a bang. Vicki Kreps, 56, a nurse from Vancouver, Wash., who was sitting in Row 18 with her two grandchildren, Brady, 7, and Brynlee, 5, said they could feel a definite shift forward in their seats, then the decompression of air in their ears. She helped put Bryn-



NATIONAL TRANSPORTATION SAFETY BOARD, VIA ASSOCIATED PRESS

lee's oxygen mask on, while Brady put his on himself.

"We definitely felt that we were descending quickly," Ms. Kreps put his on.

Evan Smith, a 72-year-old lawyer, said he began to see "dusky, smoky stuff" swirling around the cabin.

Mr. Hoch looked up and saw passengers' hair being blown back. "The best way I can describe it is like puncturing a CO2 canister and that vapor releasing out of the canister," he said.

"But we were in that canister."

A moment of hysteria broke out when a few people stood up, pointing and yelling that there was a hole in the back.

It was in Row 26, aviation authorities said in a news conference Saturday. No one was sitting in the window and middle seat. But after the "rapid decompression" of the cabin, the headrests of two nearby seats were gone, as well as the back of one.

The piece of fuselage that tore away is called a door plug because it covers what is sometimes used in other models of the plane as an emergency exit. The chairwoman of the National Transportation Safety Board, Jennifer Homendy, said on Sunday that the plug had been located in the backyard of a

Portland home.

After it blew off, a woman walked up near the front of the plane to say someone's shirt had been ripped off, Mr. Hoch said. He also said people told him they lost possessions, like their phone or earbuds.

Flight attendants made announcements asking passengers to sit down and stay seated. But Elizabeth Le, 20, a friend of Ms. Nguyen, said they were difficult to hear because of the wind whipping through the aircraft.

Confusion spread throughout the cabin, with those sitting in the front not knowing what was happening behind them, Mr. Hoch said.

Ms. Le said a boy and his mother were sitting near the miss-

ing section. Flight attendants helped them move to the other side of the plane a few minutes later, she said. The boy appeared to have lost his shirt, and his skin looked red and irritated, she added.

"It was honestly horrifying," Ms. Le said. "I almost broke down, but I realized I needed to remain calm."

Mr. Hoch said he felt a range of emotions. He was keeping his head on a swivel, constantly looking back and forth. The woman next to him was in tears. She asked him if he would hold her hand, he said, and he did.

But overall, everyone was relatively "eerily calm," Mr. Hoch said, though he added that some "were silently freaking out."

A panel used to plug an area reserved for an exit door on the Alaska Airlines Boeing 737 Max 9 jetliner tore off shortly after the flight left Portland, Ore.

Mr. Smith, who was returning to his home in Murrieta, Calif., after visiting his daughter and son-in-law in Portland, said his previous experience as a military police officer taught him that it was important to keep a cool head. He had a feeling the plane was durable enough to land.

The flight circled back to Portland. "The plane was stable. It wasn't shaking, it wasn't making any weird maneuvers, it was just flying steady," he said. "At that point, I was sure the aircraft was fine and we were going to get down OK."

Ms. Kreps said that the flight crew helped people stay composed. "I'm super impressed with

Alaska and how they handled this situation," she said.

Passengers said that once the plane landed, at 5:27, paramedics came on board. A man seated in the row immediately behind the hole said that he had hurt his foot, but no major injuries were sustained.

In a video that Ms. Le took of the flight, passengers can be heard clapping after landing.

"Oh my God," one says in the video.

_Contributing reporting were John Yoon, Victoria Kim, Orlando Mayorquin, Niraj Chokshi, Mark Walker and Johnny Diaz. Susan Beachy contributed research._

COMMERCIAL
REAL ESTATE

BUSINESS
OPPORTUNITIES

BUSINESS /
FRANCHISE
OPPORTUNITIES

Restrnts., Bars & Clubs　3440



VERY SUCCESSFUL ITALIAN
RESTAURANT in business over 30
years. Come to the sale and fun in
our Beautiful Restaurant.

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**

_If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester, and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation from a class action settlement. This notice explains your rights and options to exercise them._

A Settlement has been reached in a class action lawsuit between Defendant George Washington University et al. ("Defendant" or "GW") and certain individuals who have alleged that they, and the Settlement Class Members (definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com) are entitled to partial refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is _Shaffer et al. v. George Washington University et al._, Case No. 1:20cv-01145-RJL, in the United States District Court for the District of Columbia (the "Lawsuit"). The proposed Settlement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit.

**Am I a Class Member?** You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees, to any Released Party, in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class.

**What Can I Get?** If approved by the Court, a Settlement Fund of $5,400,000 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and service awards. What remains of the $5,400,000 will be divided equally among the approximately 18,000 Students in the Settlement Class.

**How Do I Get a Payment?** Students in the Settlement Class will not need to take any action to receive their share of the payment. Students in the Settlement Class will automatically receive their share of the payment by check mailed to the Student's last known mailing address. Alternatively, if they prefer to receive their share by Venmo or PayPal, or update their mailing address for mailing of a check, they may visit the settlement website to complete an Election Form to provide their Venmo or PayPal information, or update their mailing address. Any award will preemptively be paid to the Students in the Settlement Class. However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator no later than **March 11, 2024**. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. If you do not exclude yourself, you may object to the Settlement if you choose to do so. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed with the Court no later than **March 11, 2024**. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.GWSettlement.com. If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to causes of action asserted in this case or which could have been brought in this case based upon the facts alleged regarding the Spring 2020 semester will be released. "Mass" or "class" objections or opt outs will not be allowed.

**Who Represents Me?** The Court has appointed Hagens Berman Sobol Shapiro LLP to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

**When Will the Court Consider the Proposed Settlement?** The Court has already granted Preliminary Approval of the Settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the Settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes, hear any proper objections and arguments to the Settlement, as well as any requests for an award of attorneys' fees and expenses (not to exceed 33% of the total Settlement Fund) and Service Awards for the Plaintiffs (not to exceed $10,000 each) that may be sought by Plaintiffs' Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024**, at the United States District Court for the District of Columbia, 333 Constitution Ave. N.W., Washington D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

**How Do I Get More Information?** For more information, including a more detailed Notice, Non-Student Payor Payment Claim Form, a copy of the Settlement Agreement and other documents, go to www.GWSettlement.com, contact the settlement administrator at 1-888-302-6048 or Settlement Administrator, P.O. Box 2178, Portland, OR 97208-2178, or call Class Counsel at 1-206-623-8940.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOTICE OF (I) DEADLINE REQUIRING FILING OF PROOFS
OF CLAIM BY CREDITORS ON OR BEFORE FEBRUARY 8,
2024 AND (II) DEADLINE REQUIRING FILING OF
PROOFS OF CLAIM BY GOVERNMENTAL UNITS
ON OR BEFORE JUNE 4, 2024

# POLITICS & THE NATION

# U.S. spacecraft suffers fuel loss, threatening mission

### After launch, lander was expected to touch down on the moon Feb. 23

BY CHRISTIAN DAVENPORT

A commercial spacecraft bound for the lunar surface lifted off from Cape Canaveral, Fla., early Monday in the first launch of a U.S. space mission designed to land softly on the moon since the last of the Apollo flights in 1972. But after it separated from the rocket, the spacecraft suffered a problem with its propulsion system, resulting in a "critical loss of propellant" that threatened a lunar landing.

The Peregrine spacecraft, designed and operated by Astrobotic, an aerospace company based in Pittsburgh, carried a suite of science experiments but no people. Its launch at 2:18 a.m. Eastern time was the first flight of the United Launch Alliance's Vulcan rocket.

Shortly after separating from the rocket's second stage, the spacecraft began communicating with the ground and activated its propulsion system, the company said. But about seven hours after liftoff, the company announced that it encountered a propulsion system issue that prevented the spacecraft from pointing toward the sun, a key requirement for its solar cells to generate power. Ground controllers worked on an "improvised maneuver" to reorient the panels just before the spacecraft entered a known communications blackout. When it reemerged and the company was able to reestablish communication, it announced its maneuver to reorient the solar panels was successful.

"We are now charging the battery," Astrobotic said in a statement. But then, 29 minutes later, Astrobotic issued another, far more ominous, update: "Unfortunately, it appears the failure



The United Launch Alliance's Vulcan rocket lifts off from Cape Canaveral, Fla., on Monday. It was the first launch of a U.S. space mission designed to land softly on the moon since 1972.

CRISTOBAL HERRERA/LASHKEVICH/EPA-EFE/SHUTTERSTOCK

within the propulsion system is causing a critical loss of propellant. The team is working to try to stabilize this loss, but given the situation, we have prioritized maximizing the science and data we can capture. We are currently assessing what alternative mission profiles may be feasible at this time."

In a statement Monday, Joel Kearns, NASA's deputy associate administrator for exploration, said that "each success and setback are opportunities to learn and grow. We will use this lesson to propel our efforts to advance science, exploration, and commercial development of the moon."

The launch was only the first step in a perilous and complicated journey to the moon. The six-foot-tall lander was expected to touch down Feb. 23.

Even if that happened, Peregrine may get heat to the lunar surface by another company vying to become the first private

venture to land a spacecraft on the moon. Intuitive Machines, a Houston-based venture led by NASA veterans, announced late Friday that it is aiming to land a spacecraft on the lunar surface on Feb. 22 or earlier, potentially eclipsing Astrobotic by a day. It is

*"The team is working to try to stabilize this loss, but given the situation, we have prioritized maximizing the science and data we can capture."*

Astrobotic, which operates the spacecraft, in a statement about the fuel loss

expected to launch in mid-February on a SpaceX Falcon 9 rocket.

The twin missions represent the an extraordinary race, one between companies, not countries, as the growing commercial space sector seeks to extend its reach beyond low Earth orbit to the moon, about 240,000 miles away. It also is a significant moment for

NASA's Artemis program, which is aiming to return astronauts to the surface for the first time since the Apollo program, perhaps as soon as 2025. NASA is planning additional missions to bring science experiments and other payloads to the moon, including a robotic rover, which would drill for water in the form of ice near

the lunar south pole.

Later this year, or in early 2025, NASA plans to send four astronauts, three Americans and one Canadian, on a trip around the moon that would set the stage for a landing sometime in the years to come. That mission would be the second flight of NASA's Orion spacecraft, which traveled around the moon without anyone aboard in late 2022 before splashing down in the Pacific.

Monday's launch also was significant as the inaugural flight of the new Vulcan rocket, which has been under development for years by ULA, a joint venture of Lockheed Martin and Boeing. First flights of rockets are notoriously tricky, and a successful launch is a coup for ULA when it is reportedly seeking suitors for a sale.

The company has scheduled as many as six flights for Vulcan this year and 28 next year, as it seeks to compete with SpaceX and its workhorse Falcon 9 rocket, which is aiming for 144 launches this year.

The flight is also significant for Jeff Bezos's Blue Origin, which supplied the two BE-4 engines that powered the rocket's first stage. Those engines have been in development for nearly a decade after Congress directed ULA to stop using engines made in Russia for its Atlas V rocket. (Bezos owns The Washington Post.)

The Pentagon has been eager for some time to use Vulcan for its sensitive national security missions as an alternative to SpaceX. But the rocket will have to complete a second flight successfully this year for the Defense Department to certify it as qualified.

Seven BE-4 engines also will propel Blue Origin's New Glenn rocket, which Bezos has said will fly for the first time this year. Vulcan and New Glenn are to be used to launch Amazon's Kuiper internet satellite network, which would beam signals to ground stations allowing connectivity to

remote and rural areas. Amazon sees the system as competing with SpaceX's Starlink constellation, which already has more than 5,000 satellites in orbit.

Peregrine is carrying 20 scientific instruments, including five from NASA that would study the behavior of water on the lunar surface. It is also carrying DNA samples and cremated remains, in partnership with Celestis, a Houston-based company. In a press release, the company said the samples "will remain on the moon as a permanent tribute to the intrepid souls who never stopped reaching for the stars." The Navajo Nation, which views the moon as sacred, objected, however, and asked for the mission to be postponed but was unsuccessful.

Astrobotic's Peregrine spacecraft will take a fairly direct route to the moon, but it won't attempt to land until Feb. 23. It loiters in lunar orbit waiting for the sun to shine on its intended landing spot, Astrobotic chief executive John Thornton said during a briefing before the launch.

While he said he was confident in the company's ability to land the spacecraft successfully, he said he was well aware of the difficulties.

"It will be exciting, nail-biting and terrifying all at once — a whole range of emotions," he said. "If you look back at the course of history, only about half of those missions have been successful. And most of those have been funded by superpowers with vastly larger budgets than this mission has been granted. So it's a really, really big challenge."

Speaking on NASA's broadcast after the launch, he said the mission "is the beginning of the dawn of the new era for the surface of the moon and how we think about space. This is an opportunity for commercial payloads to fly to the surface of the moon on a regular, routine basis. That means our nation's scientists, our world's scientists, can access the moon in ways never before possible."

---

**DIGEST**

### MONTANA

#### Governor to donate new mansion to state

Montana Gov. Greg Gianforte and first lady Susan Gianforte have purchased a historic Helena mansion for $4 million that they eventually plan to donate to the state for use as the governor's mansion, the governor's office announced Monday.

Gianforte (R) is a multimillionaire who founded a cloud computing company that sold to Oracle in 2011 in a $1.5 billion deal.

"Susan and I are fortunate to have achieved the American dream, and with that, we believe we have an obligation to give back," Gianforte said in a statement.

The Hauser House was built in 1885 by Samuel T. Hauser, an entrepreneur and one of Montana's territorial governors. It was once owned by former Montana governor Tim Babcock.

The nine-bedroom property,

which is on the National Register of Historic Places, was listed for sale for $6.18 million in June. Its assessed value with Lewis and Clark County is nearly $1.36 million.

The Gianfortes purchased the home last week, and it will be their primary residence in Helena, his office said.

Officials in the governor's office did not immediately respond to a question asking what might happen to the existing governor's mansion near the Capitol; that home has been closed since 2021 for renovations. The Legislature has appropriated more than $2 million for the work.

The Department of Administration, which maintains the house, will decide whether to accept the donated mansion and, if so, what the state would use it for.

Gianforte's first term in office ends in January 2025. He has not said whether he will seek reelection, though he is widely expected to.

*— Associated Press*

### ALABAMA

#### Boy, 5, fatally shot while getting haircut

A 5-year-old boy was killed when someone shot into a home where he was getting his hair cut, according to Alabama police.

The shooting happened at about 10 a.m. Sunday in Bessemer. The child was identified as Brandon Jamal Nation III, of Fairfield, according to the Jefferson County Coroner's Office.

Police told news outlets that Nation's mother had taken the child to the home to get his hair cut when someone outside began shooting into the home.

"It's terrible," Bessemer Police Detective Justin Burmeister told Al.com. "Our thoughts are with the family during this incredibly challenging time."

A man inside the home, identified as the boy's barber but not by name, was shot and taken to a hospital. His condition was not immediately available.

*— Associated Press*

---

**PLEASE READ THIS NOTICE CAREFULLY.**
If you paid or incurred George Washington University tuition and/or fees for the Spring 2020 Semester, and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation from a class action settlement. *This notice explains your rights and options to exercise them.*

A Settlement has been reached in a class action lawsuit between Defendant George Washington University et al. ("Defendant" or "GW") and certain individuals who have alleged that they, and the Settlement Class Members (Definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com) are entitled to partial refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is *Shaffer et al. v. George Washington University et al.*, Case No. 1:20-cv-01145-RJL, in the United States District Court for the District of Columbia (the "Lawsuit"). The proposed Settlement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit.

**Am I a Class Member?** You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees, to any Released Party, in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class.

**What Can I Get?** If approved by the Court, a Settlement Fund of $5,400,000 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and service awards. What remains of the $5,400,000 will be divided equally among the approximately 18,000 Students in the Settlement Class.

**How Do I Get a Payment?** Students in the Settlement Class will not need to take any action to receive their shares of the payment. Students in the Settlement Class will automatically receive their shares by check mailed to the Student's last known mailing address. Alternatively, if they prefer to receive their share by Venmo or PayPal, or update their mailing address for mailing of a check, they may visit the settlement website to complete an Election Form to provide their Venmo or PayPal information, or update their mailing address. Any award will presumptively be paid to the Students in the Settlement Class. However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly executed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator no later than **March 11, 2024**. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over

the legal issues in the lawsuit. If you do not exclude yourself, you may object to the Settlement if you choose to do so. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed with the Court no later than **March 11, 2024**. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.GWSettlement.com. If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to causes of action asserted in this case or which could have been brought in this case based upon the facts alleged regarding the Spring 2020 semester will be released. "Mass" or "class" objections or opt-outs will not be allowed.

**Who Represents Me?** The Court has appointed Hagens Berman Sobol Shapiro LLP to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court has already granted Preliminary Approval of the Settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the Settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes, hear any proper objections and arguments to the Settlement, as well as any requests for an award of attorneys' fees and expenses (not to exceed 33% of the total Settlement Fund) and Service Awards for the Plaintiffs (not to exceed $10,000 each) that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024, at 3:00 p.m. ET**, at the United States District Court for the District of Columbia, 333 Constitution Ave. N.W., Washington D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

**How Do I Get More Information?** For more information, including a more detailed Notice, Non-Student Payor Payment Claim Form, a copy of the Settlement Agreement and other documents, go to www.GWSettlement.com, contact the settlement administrator at 1-888-302-6648 or Settlement Administrator, P.O. Box 2178, Portland, OR 97208-2178, or call Class Counsel at 1-708-628-4949.



# 5.25%APY

9-month no penalty CD with unlimited deposits.

**The future belongs to those who prepare. Secure your rate.**

## call: (571) 375-1300

## MainStreetBank

mstreetbank.com

Member FDIC

*Interest Rate is 5.128% with an Annual Percentage Yield (APY) of 5.25%. $10,000 minimum to open and receive promotional rate. Rate is current as of January 2, 2024. MainStreet Bank reserves the right to discontinue this promotional offering at any time. You have the ability to withdraw any or all of the deposited funds beginning 7 days after deposit.*

Attachment 8

# AccuWeather    Baltimore, MD 46°F

TODAY    HOURLY    DAILY    RADAR    MINUTECAST    MONTHLY    AIR QUALITY    HEALTH & ACTIVITIES


**Adobe** Spread the word on social with Adobe Photoshop.    Select subject    See how

⚠ 3    **Coastal Flood Warning**    →


If you paid or incurred **George Washington University** tuition and/or fees during the **Spring 2020 Semester,**

CURRENT WEATHER
12:19 PM



**46°**F

RealFeel° 41°

| | |
|---|---|
| RealFeel Shade° | 41° |
| Air Quality | Fair |
| Wind | ESE 6 mph |
| Wind Gusts | 14 mph |

Rain    MORE DETAILS →

MINUTECAST°
Rain for at least 60 min



CURRENT AIR QUALITY

TODAY
1/9

**40**
AQI

Fair

The air quality is generally acceptable for most individuals. However, sensitive groups may experience minor to moderate symptoms from long-term exposure.

Based on Current Pollutants

More Details →

Learn more at
 plume labs

## Top Stories

WINTER WEATHER
Midwest faces 2 major winter storms in 4 days, including a blizzard
6 hours ago


SEVERE WEATHER
Severe storms, flooding downpours to keep blasting the South and East
21 minutes ago


TRAVEL
Missing part of Alaska Airlines plane is found in Portland, NTSB says
1 day ago


SEVERE WEATHER
Northeast braces for life-threatening flash floods, damaging winds
2 hours ago


WINTER WEATHER
Parade of storms, Arctic blast to wallop Northwest, Rockies


## Health & Activities









TODAY    HOURLY    DAILY    RADAR    MINUTECAST    MONTHLY    AIR QUALITY    HEALTH & ACTIVITIES


Adobe  Spread the word on social with Adobe Photoshop.    Select subject    See how

⚠ 3 | **Coastal Flood Warning**                                                    →

**CURRENT WEATHER**
12:19 PM



46°F

RealFeel° 41°

| RealFeel Shade° | 41° |
| Air Quality | Fair |
| Wind | ESE 6 mph |
| Wind Gusts | 14 mph |

Rain                                                    MORE DETAILS →

MINUTECAST°
Rain for at least 60 min

**CURRENT AIR QUALITY**

TODAY
1/9

40
AQI

Fair

The air quality is generally acceptable for most individuals. However, sensitive groups may experience minor to moderate symptoms from long-term exposure.

Based on Current Pollutants

More Details →

Learn more at
◑ plume labs

**Health & Activities**

 Dust & Dander

 Arthritis

Fishing


and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation.

**Top Stories**

WINTER WEATHER
Midwest faces 2 major winter storms in 4 days, including a blizzard
6 hours ago


SEVERE WEATHER
Severe storms, flooding downpours to keep blasting the South and East
21 minutes ago


TRAVEL
Missing part of Alaska Airlines plane is found in Portland, NTSB says
1 day ago


SEVERE WEATHER
Northeast braces for life-threatening flash floods, damaging winds
2 hours ago


WINTER WEATHER
Parade of storms, Arctic blast to wallop Northwest, Rockies
6 hours ago




AccuWeather | Baltimore, MD 46° | Location ⌄

TODAY   HOURLY   DAILY   RADAR   MINUTECAST   MONTHLY   AIR QUALITY   HEALTH & ACTIVITIES


**Adobe** — Spread the word on social with Adobe Photoshop.   See how

⚠ 3 | **Coastal Flood Warning** →


**Click here for more information about the class action settlement. www.GWSettlement.com**

**CURRENT WEATHER**
12:19 PM



## 46°F
RealFeel° 41°

Rain

| | |
|---|---|
| RealFeel Shade° | 41° |
| Air Quality | Fair |
| Wind | ESE 6 mph |
| Wind Gusts | 14 mph |

MORE DETAILS →

MINUTECAST°
Rain for at least 60 min

**CURRENT AIR QUALITY**

**TODAY**
1/9

40
AQI

Fair

The air quality is generally acceptable for most individuals. However, sensitive groups may experience minor to moderate symptoms from long-term exposure.

Based on Current Pollutants

More Details →

Learn more at
plume labs

## Health & Activities


Dust & Dander

Arthritis


Fishing

### Top Stories

WINTER WEATHER
Midwest faces 2 major winter storms in 4 days, including a blizzard
6 hours ago


SEVERE WEATHER
Severe storms, flooding downpours to keep blasting the South and East
21 minutes ago


TRAVEL
Missing part of Alaska Airlines plane is found in Portland, NTSB says
1 day ago


SEVERE WEATHER
Northeast braces for life-threatening flash floods, damaging winds
2 hours ago


WINTER WEATHER
Parade of storms, Arctic blast to wallop Northwest, Rockies
6 hours ago


USA TODAY

AVOID FROZEN PIPES
**Wintertime basics**

READY TO GET SMART?
**Start the day smarter** ☀️

GIVING COUNTIES IN SWING STATES
**Crucial counties in '24**

2 CAESAGES
**Notable deaths in 2023**

SUBSCRIBE NOW
$1 the first 6 months

U.S.   Israel War   Sports   Entertainment   Life   Money   Tech   Travel   Opinion   ⌄   🔍   **42°F** ☁️   **Subscribe**   Sign In ⌄

## U.S. News | Education ⌄



# Biden is forgiving millions in student loans. He wants all the credit.

**EDUCATION** 9:40 a.m. ET Jan. 8



### Late student loan bills? Companies face big fines for chaotic billing.

The Biden administration is withholding more than $2 million from three of the nation's largest student loan servicers over billing errors.

**EDUCATION**  Jan. 5, 2024



### Harvard was just the start: College presidents feel chilling effect

After Harvard president stepped down, observers say the scrutiny of college presidents shows no signs of ending.

**EDUCATION**  Jan. 5, 2024



### 15-year-old college grad wants you to 'never let people tell you no'

15-year-old Alena McQuarter graduated on Dec. 11 with a bachelor's degree a newfound voice of her own. Here's how she carved her path.

**EDUCATION**  Jan. 4, 2024



### Read Claudine Gay's resignation letter as Harvard's president

Harvard's Office of the President posted Claudine Gay's full resignation letter Tuesday.

**EDUCATION**  Jan. 3, 2024



### Student loan debt is difficult to avoid. Here's how some pulled it off.

Is it possible to go to college or get a high-paying job without student loans? Yes, but without a wealthy family or big scholarship it's difficult.

Advertisement



If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester, and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation.

Click here for more information about the class action settlement.
www.GWSettlement.com

**On Politics, in your inbox**

Gear up for 2022 with this national take on the political world.

Email Address   →

*We're always working to improve your experience. Let us know what you think.*

Advertisement



150 YEARS
of the Kentucky Derby in a hardcover book

TOP EVENTS | NCAAF | **M** 1 MICH 34 | Final | DET 3-33 7:00 PM ET | ORL 21-15 7:00 PM ET | NY 21-15 7:30 PM ET | 8:30 PM ET NBA TV | MEM 13-23 | DAL 22-15 10:30 P



NCAAF   Home   Bowl Games   Scores   Schedule   Teams   Standings   Stats   Rankings   Daily Lines   Recruiting   More ⌄


If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester,



EXCLUSIVE CONTENT   **GET ESPN+**

# College Football Playoff championship: Washington-Michigan takeaways



Michigan won its first national title since 1997 against Washington on Monday. Maria Lysaker/USA TODAY Sports



**Bill Connelly, ESPN Staff Writer**
Jan 9, 2024, 08:37 AM ET

⬆ Share   ♡ Like      ♥ 159

In the middle of the first decade of the 2000s, Rob Ash's Drake Bulldogs and Jim Harbaugh's San Diego Toreros began a brief but impactful rivalry. Drake beat USD 25-20 in 2004 on the way to a Pioneer League title and FCS playoff bid. In 2005, Harbaugh returned the favor, winning 31-26 at home and winning their first conference title.

In 2006, Ash thought Drake had USD in the crosshairs. The Bulldogs were meeting the Toreros at home for the eventual conference title, and it was a blustery Iowa day: cold, windy and eventually wet. Ash thought he had Harbaugh's squad of Californians at a



NCAAF   Home   Bowl Games   Scores   Schedule   Teams   Standings   Stats   Rankings   Daily Lines   Recruiting   More ⌄


and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation.

ESPN+

EXCLUSIVE CONTENT          GET ESPN+

# College Football Playoff championship: Washington-Michigan takeaways



Michigan won its first national title since 1997 against Washington on Monday. Maria Lysaker/USA TODAY Sports

   **Bill Connelly, ESPN Staff Writer**
Jan 9, 2024, 08:37 AM ET

 Share    Like                    ♥ 159

In the middle of the first decade of the 2000s, Rob Ash's Drake Bulldogs and Jim Harbaugh's San Diego Toreros began a brief but impactful rivalry. Drake beat USD 25-20 in 2004 on the way to a Pioneer League title and FCS playoff bid. In 2005, Harbaugh returned the favor, winning 31-26 at home and winning their first conference title.

In 2006, Ash thought Drake had USD in the crosshairs. The Bulldogs were meeting the Toreros at home for the eventual conference title, and it was a blustery Iowa day: cold, windy and eventually wet. Ash thought he had Harbaugh's squad of Californians at a disadvantage in the battle for another conference title, but USD showed up prepared. Their players wore puffy jackets and warm clothing provided by the San Diego Chargers,


Click here for more information about the class action settlement.
www.GWSettlement.com



EXCLUSIVE CONTENT      GET ESPN+

# College Football Playoff championship: Washington-Michigan takeaways



Michigan won its first national title since 1997 against Washington on Monday. Maria Lysaker/USA TODAY Sports



**Bill Connelly, ESPN Staff Writer**
Jan 9, 2024, 08:37 AM ET

 Share    ♡ Like                                           ♥ 159

In the middle of the first decade of the 2000s, Rob Ash's San Diego Toreros and Jim Harbaugh's San Diego Toreros began a brief but impactful rivalry. Drake beat USD 25-20 in 2004 on the way to a Pioneer League title and FCS playoff bid. In 2005, Harbaugh returned the favor, winning 31-26 at home and winning their first conference title.

In 2006, Ash thought Drake had USD in the crosshairs. The Bulldogs were meeting the Toreros at home for the eventual conference title, and it was a blustery Iowa day: cold,

Subscribe  Sign in

## The Washington Post

*Democracy Dies in Darkness*


If you paid or incurred George Washington University tuition
and/or fees during the Spring 2020 Semester, and the tuition
and/or fees have not been refunded in their entirety,
you may be eligible to receive cash compensation.

Click here for more information about the class action settlement.
www.GWSettlement.com

• LIVE    Trump immunity hearing    Winter storm    Israel-Gaza war

**LIVE**

# Judges appear skeptical of Trump's Jan. 6 immunity claim

• 11:55 a.m.
From Marbury to Blassingame, judges' read of precedent poses risks for Trump

• 11:51 a.m.
Stone-faced Trump listens to judges weigh his fate

**MORE COVERAGE**

★ Trump trades Iowa rallies for day in court, in preview of campaign to come

★ Violent political threats surge as 2024 begins, haunting American democracy



(Robb Hill for The Post)

## Global economy headed for worst half-decade in 30 years, World Bank warns

While higher interest rates appear to be controlling inflation without a serious financial crisis, the global economy's performance is lagging, according to the World Bank.

By David J. Lynch



### LATEST FROM THE POST ›

Taylor Swift didn't write 'Argylle.' So who did?
7 minutes ago


Why Democrats ditched the Iowa caucuses and Republicans kept them
9 minutes ago

France's new prime minister is 34. Here's what to know about Gabriel Attal.
31 minutes ago

Millions to lose affordable internet unless Congress extends subsidies
38 minutes ago


Jimmy Kimmel responds to Aaron Rodgers in scathing 7-minute monologue
52 minutes ago

**Legal Notice**
Sponsored · 🌐

If you paid Geo. Washington Univ. tuition and/or fees during the Spring 2020 Semester, you may be eligible for compensation.



GWSETTLEMENT.COM
GW Tuition Settlement

Learn more

👍 Like     💬 Comment     ↪ Share   ▾

Sponsored



Perigold
perigold.com



Sponsored

Geo. Washington Univ.
Tuition Settlement
gwsettlement.com

Attachment 9

# *George Washington Tuition Settlement*

## Sponsored Search Keyword List

GW Tuition Lawsuit
GW Tuition Settlement
GW Tuition Class Action
GW Tuition Class Action Lawsuit
GW Tuition Class Action Settlement
GW Tuition Litigation
George Washington University Tuition Lawsuit
George Washington University Tuition Settlement
George Washington University Tuition Class Action
George Washington University Tuition Class Action Lawsuit
George Washington University Tuition Class Action Settlement
George Washington University Tuition Litigation
GW Lawsuit
GW Settlement
GW Class Action
GW Class Action Lawsuit
GW Class Action Settlement
GW Litigation
George Washington University Lawsuit
George Washington University Settlement
George Washington University Class Action
George Washington University Class Action Lawsuit
George Washington University Class Action Settlement
George Washington University Litigation
GW Tuition Refund
GW Tuition Reimbursement
GW Tuition Payment
GW Tuition Cash Refund
GW Tuition Cash Reimbursement
GW Tuition Cash Payment
George Washington University Tuition Refund
George Washington University Tuition Reimbursement
George Washington University Tuition Payment
George Washington University Tuition Cash Refund
George Washington University Tuition Cash Reimbursement
George Washington University Tuition Cash Payment
GW Refund
GW Reimbursement
GW Payment
GW Cash Refund
GW Cash Reimbursement
GW Cash Payment
George Washington University Refund
George Washington University Reimbursement
George Washington University Payment
George Washington University Cash Refund
George Washington University Cash Reimbursement
George Washington University Cash Payment

Attachment 10



GW Settlement

About 31,800,000 results (0.34 seconds)

**Sponsored**

 www.gwsettlement.com/ ⋮

### George Washington University - GW Tuition Settlement

Pay tuition/fees during the Spring 2020 semester? You may be eligible for compensation. To find out more information and to see if you are included, visit the Settlement website.

 Inside Higher Ed
https://www.insidehighered.com › news › 2024/01/05 ⋮

### GW settles COVID-19 online learning lawsuit for $5.4 million

4 days ago — **George Washington** University has reached a $5.4 million **settlement** with former students who allege the institution broke its contract with ...

 The GW Hatchet
https://gwhatchet.com › 2024/01/03 › district-judge-a... ⋮

### District judge approves $5.4 million settlement in tuition ...

6 days ago — U.S. District Judge Richard Leon gave preliminary approval to the $5.4 million class-action **settlement** between **GW** and a group of students and ...

 PR Newswire
https://www.prnewswire.com › news-releases › if-you-... ⋮

### If you paid or incurred George Washington University ...

4 hours ago — A **Settlement** has been reached in a class action lawsuit between Defendant **George Washington** University et al. ("Defendant" or "**GW**") and certain ...

 gwsettlement.com

GW Settlement

  yahoo!

🔍 **All**   🖼 Images   ▷ Videos   📰 News   ⋮ More          Anytime ⌄          Get beautiful photos on every new browser tab. Download >>

Sign In

About 538,000 search results

Ad related to: GW Settlement

www.gwsettlement.com

### George Washington University - GW Tuition Settlement

Pay tuition/fees during the Spring 2020 semester? You may be eligible for compensation. To find out more information and to see if you are included, visit the **Settlement** website.

www.gwsettlement.com ⌄

### Shaffer v. George Washington University - Home

The deadline to object to the **Settlement** is March 11, 2024. Attend A Hearing Ask to speak in Court about the fairness of the **Settlement** during the Final Approval Hearing on April 2, 2024 .

www.morningstar.com › news › pr-newswire ⌄

### If you paid or incurred George Washington University tuition ...

3 hours ago · A **Settlement** has been reached in a class action lawsuit between Defendant George Washington University et al. ("Defendant" or "**GW**") and certain individuals who have alleged that...

www.insidehighered.com › news › quick-takes ⌄

### GW settles COVID-19 online learning lawsuit for $5.4 million

4 days ago · George Washington University has reached a $5.4 million **settlement** with former students who allege the institution broke its contract with them when it abruptly switched to onlin...

www.gwsettlement.com › Home › Faq ⌄

### Shaffer v. George Washington University - Frequently Asked ...

The Plaintiffs and **GW** have determined that it is in their best interests to **settle** to avoid the expenses and uncertainties associated with continued litigation. This **Settlement** resolves all...

## People also ask

What is GM's $121 million settlement?                    ⌄

What is a Watts Guerra settlement?                       ⌄

 **Microsoft** Bing

GW Tuition Litigation

Q SEARCH    💬 CHAT    IMAGES    VIDEOS    MAPS    NEWS    SHOPPING    ⋮ MORE    TOOLS

About 334,000 results

🌐 gwsettlement.com
https://www.gwsettlement.com ▾

## George Washington University | GW Tuition Settlement

Ad Pay tuition/fees during the Spring 2020 semester? You may be eligible for compensation. To find out more information and to see if you are included, visit the Settlement website.

## People also ask

**How much does the George Washington University Law School cost?**

The George Washington University Law School' tuition & fees are **$67,380** for prospective students in the academic year 2022-2023. 81.04% of enrolled…

The George Washington Univer…
🆈 www.collegetuitioncompare.com/l…

**How much does GW tuition cost?**

Tuition for new, incoming first-year undergraduate students and returning second- and third-year students will be **$62,110**, a 3.9 percent increase from the current 2021-22 tuition rate of…

Tuition Rates Announced for 20…
GW gwtoday.gwu.edu/tuition-rates-an…

**Does (matric**

* Fifth-y
GW pric
year (
univers
in fall 2

Feedback

🌐 gwsettlement.com
https://www.gwsettlement.com/Home/Faq ▾

## Shaffer v. George Washington University - Frequently Asked …

Web The lawsuit alleges that Students who attended **GW during the Spring 2020 semester** are **entitled to partial refunds of tuition** and fees because **GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic** in accordance with District …

EXPLORE FURTHER

| | |
|---|---|
| 🆒 George Washington Regular Decision 2026 - College … | talk.collegeconfidential…. |
| 🆒 **GW Regular Decision 2023** - College Confidential Forums | talk.collegeconfidential…. |
| 🅱 **Wells Fargo Refund of GAP Fees Settlement** - Class … | classactionsreporter.com |
| 🅱 If You Got a Schwab Settlement Check, Here's What to Know | barrons.com |
| 🅹 Washington Supreme Court Decisions 2023 - Justia Law | law.justia.com |

Recommended to you based on what's popular • Feedback

 Inside Higher Ed
https://www.insidehighered.com/news/quick-takes/… ▾

Attachment 11

# If you paid or incurred George Washington University tuition and/or fees during the Spring 2020 Semester, and the tuition and/or fees have not been refunded in their entirety, you may be eligible to receive cash compensation from a class action settlement

NEWS PROVIDED BY

**Hagens Berman Sobol Shapiro LLP →**
09 Jan, 2024, 08:00 ET

WASHINGTON, Jan. 9, 2024 /PRNewswire/ --

<u>**PLEASE READ THIS NOTICE CAREFULLY**</u>.
*This notice explains your rights and options to exercise them*.

A Settlement has been reached in a class action lawsuit between Defendant George Washington University et al. ("Defendant" or "GW") and certain individuals who have alleged that they, and the Settlement Class Members (Definitions for terms used herein can be found in the Settlement Agreement available at www.GWSettlement.com) are entitled to partial refunds of tuition and fees for the Spring 2020 Semester because GW transitioned to remote instruction in March 2020 amid the COVID-19 pandemic in accordance with District of Columbia legal mandates. The case is *Shaffer et al. v. George Washington University et al.*, Case No. 1:20-cv-01145-RJL, in the United States District Court for the District of Columbia

(the "Lawsuit"). The proposed Settlement is not an admission of wrongdoing by GW, and GW denies all allegations of wrongdoing and disclaims all liability with regard to all claims in the Lawsuit.

**Am I a Class Member?** You are a member of the Settlement Class if you are a Student or a Payor who paid or incurred tuition and/or fees, to any Released Party, in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety, and who is not excluded from the Settlement Class.

**What Can I Get?** If approved by the Court, a Settlement Fund of $5,400,000 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and service awards. What remains of the $5,400,000 will be divided equally among the approximately 18,000 Students in the Settlement Class.

**How Do I Get a Payment?** Students in the Settlement Class will not need to take any action to receive their shares of the payment. Students in the Settlement Class will automatically receive their shares by check mailed to the Student's last known mailing address. Alternatively, if they prefer to receive their share by Venmo or PayPal, or update their mailing address for mailing of a check, they may visit the settlement website to complete an Election Form to provide their Venmo or PayPal information, or update their mailing address. Any award will presumptively be paid to the Students in the Settlement Class. However, a Student and a Payor who made payments of tuition and fees on that Student's behalf for the Spring 2020 semester may agree and communicate to the Settlement Administrator via a jointly filed Non-Student Payor Payment Claim Form that the Cash Award for that Student should be paid to the Payor. In that instance, the Student will not receive a Cash Award.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator no later than **March 11, 2024**. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. If you do not exclude yourself, you may object to the Settlement if you choose to do so. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed with the Court no later than **March 11, 2024**. Specific instructions about how to object

to, or exclude yourself from, the Settlement are available at www.GWSettlement.com. If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to causes of action asserted in this case or which could have been brought in this case based upon the facts alleged regarding the Spring 2020 semester will be released. "Mass" or "class" objections or opt outs will not be allowed.

**Who Represents Me?** The Court has appointed Hagens Berman Sobol Shapiro LLP to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court has already granted Preliminary Approval of the Settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the Settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes, hear any proper objections and arguments to the Settlement, as well as any requests for an award of attorneys' fees and expenses (not to exceed 33% of the total Settlement Fund) and Service Awards for the Plaintiffs (not to exceed $10,000 each) that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **April 2, 2024, at 3:00 p.m. ET**, at the United States District Court for the District of Columbia, 333 Constitution Ave. N.W., Washington D.C. 20001. The date and time of the Final Approval Hearing are subject to change by Court Order, and the hearing may be conducted remotely. Any changes, including instructions for how Settlement Class Members may attend the hearing if it is conducted virtually or by telephonic means, will be posted at the settlement website, www.GWSettlement.com and on the Court's docket on PACER at http://ecf.dcd.uscourts.gov.

**How Do I Get More Information?** For more information, including a more detailed Notice, Non-Student Payor Payment Claim Form, a copy of the Settlement Agreement and other documents, go to www.GWSettlement.com, contact the settlement administrator at 1-888-302-6048 or Settlement Administrator, P.O. Box 2178, Portland, OR 97208-2178, or call Class Counsel at 1-708-628-4949.

SOURCE Hagens Berman Sobol Shapiro LLP



# PRN Top Stories Newsletters

Sign up to get PRN's top stories and curated news delivered to your inbox weekly!

Enter Your Email

Select Country