# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARK SHAFFER, MARGARET MAULDIN,
CHARAFEDDINE ZAITOUN, and MARC
LESSIN, Individually and on Behalf of All
Others Similarly Situated,

                      Plaintiffs,

    v.

THE GEORGE WASHINGTON
UNIVERSITY and THE BOARD OF
TRUSTEES OF GEORGE WASHINGTON
UNIVERSITY,

                      Defendants.

No. 1:20-cv-01145-RJL

Hon. Richard J. Leon

## PLAINTIFFS' MOTION FOR FINAL APPROVAL

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

       A.    Factual Background. ........................................................................... 2

       B.    Procedural History. ............................................................................. 3

III.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES REMAINS
       APPROPRIATE ................................................................................................. 4

       A.    Numerosity is met with over 19,875 GW Students and Payors as
             Class Members. ................................................................................... 5

       B.    Commonality exists given numerous questions capable of class
             wide resolution. .................................................................................. 6

       C.    The claims of the class representatives are typical of the claims of
             the Class Members. ............................................................................. 7

       D.    The representative parties have fairly and adequately protected the
             interests of the Settlement Class Members. ....................................... 7

       E.    The Proposed Settlement Class Meets The Requirements Of Rule
             23(b)(3). .............................................................................................. 9

             1.    Common questions predominate. .............................................. 9

             2.    A class action is superior to other mechanisms, particularly
                   individual litigation. ............................................................... 10

IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS .......................... 10

V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE AND WARRANTS FINAL APPROVAL BY THE COURT .... 13

       A.    First Factor: Terms of the Settlement in Relation to Strengths of
             Arguments Supports Approval. .......................................................... 14

       B.    Second Factor: The Existence of Arms' Length Negotiations
             Supports Approval. ............................................................................ 14

       C.    Third Factor: Status of Litigation Supports Approval. ...................... 15

D.    Fourth Factor: The Representation of Experienced Counsel Supports Approval. ........................................................... 15

E.    Fifth Factor: The Class Reaction to the Agreement. ............................................... 15

F.    The Remainder of the Rule 23(e)(2) Factors Support Final Approval. ........................................................... 16

      1.    The Allocation Plan continues to be fair, reasonable and adequate. ........................................................... 16

      2.    The implemented form and method of providing Notice to the Settlement Class was appropriate, meeting all Rule 23 and due process expectations. ................................................ 17

      3.    The requested Service Awards and Attorneys' Fees and Expenses are reasonable and in-line with other similar settlements in this area of law. ......................................... 18

      4.    The Parties have no additional agreements. ............................... 19

      5.    Proposed Settlement Class Members are treated equitably. ...................... 19

VI.    CONCLUSION ........................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re APA Assessment Fee Litig.*,
311 F.R.D. 8 (D.D.C. 2015)................................................................................6

*Arredondo v. Univ. of La Verne*,
No. 2:20-cv-7665 (C.D. Cal.) ...........................................................................1

*Barnes v. District of Columbia*,
242 F.R.D. 113 (D.D.C. 2007)...........................................................................8

*Botts v. Johns Hopkins Univ.*,
1:20-cv-01335-JRR (D. Md. April 20, 2023) ..................................................15

*Botts v. Johns Hopkins Univ.*,
No. 1-20-cv-01335 (D. Md.)..............................................................................1

*Bynum v. D.C.*,
412 F. Supp. 2d 73 (D.D.C. 2006)...................................................................15

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003)........................................................................5, 6

*Choi v. Brown Univ.*,
No. 1:20-cv-00191 (D.R.I.)................................................................................1

*In re Columbia Univ. Tuition Refund Action*,
No. 1:20-cv-03208 (JMF) (S.D.N.Y. Mar. 29, 2022)....................................15

*D'Amario v. Univ. of Tampa*,
No. 7:20-cv-03744 (S.D.N.Y.)...........................................................................1

*D'Amario v. Univ. of Tampa*,
No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022)...........................................15

*In re Domestic Airline Travel Antitrust Litigation*,
322 F. Supp. 3d 64 (D.D.C. 2018)...................................................................14

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...........................................................................................9

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*,
573 F. Supp. 2d 205 (D.D.C. 2008)......................................................10, 11, 12

*Faber v. Cornell Univ.*,
3:20-cv-00467-MAD-MIL (N.D.N.Y. Dec. 13, 2023)...................................15

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.,*
    4 F. Supp. 3d 94 (D.D.C. 2013) ................................................................13

*Ferrer v. CareFirst, Inc.,*
    No. 16-CV-02162 (APM), 2019 WL 11320974 (D.D.C. Sept. 30, 2019) .............15

*Fittipaldi v. Monmouth Univ.,*
    No. 3:20-cv-05526 (D.N.J.) ......................................................................1

*Ford v. Rensselaer Polytechnic Institute,*
    1:20-cv-00470-DNH-CFH (N.Y.N.D. Jan. 9, 2024) ...................................16

*Garnett v. Zeilinger,*
    301 F. Supp. 3d 199 (D.D.C. 2018) ...........................................................5

*Little v. Washington Metro. Area Transit Auth.,*
    313 F. Supp. 3d 27 (D.D.C. 2018) .............................................................11

*In re Livingsocial Mktg. & Sales Practice Litig.,*
    298 F.R.D. 1 (D.D.C. 2013) ....................................................................8

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    No. MDL 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ...........11, 12, 13, 15

*Martin v. Lindenwood Univ.,*
    No. 4:20-cv-01128 (E.D. Mo.)..................................................................1

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    565 F. Supp. 2d 49 (D.D.C. 2008) ...........................................................12

*Metzner v. Quinnipiac Univ.,*
    No. 3:20-cv-00784-KAD .........................................................................1

*Nat'l Veterans Legal Servs. Program v. United States,*
    235 F. Supp. 3d 32 (D.D.C. 2017) ............................................................7

*Pigford v. Glickman,*
    185 F.R.D. 82 (D.D.C. 1999), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000) ...................10

*Porter v. Emerson College,*
    No. 1:20-cv-11897 (D. Mass.) ..................................................................1

*Radosti v. Envision EMI, LLC,*
    760 F. Supp. 2d 73 (D.D.C. 2011) ...........................................................15

*Rocchio v. Rutgers, the State Univ. of New Jersey,*
    No. MID-L-003039-20 (Middlesex County, NJ)...........................................1

*Rosado v. Barry Univ., Inc.*,
No. 1:20-cv-21813 (S.D. Fla.) ................................................................1

*Shaffer v. George Washington Univ.*,
27 F.4th 754 (D.C. Cir. 2022) ...............................................................7

*Smith v. University of Pennsylvania*,
No. 20-cv-20286 (E.D. Pa.) ...................................................................1

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014) ..............................................................5

*Twelve John Does v. District of Columbia*,
117 F.3d 571 (D.C. Cir. 1997) ..............................................................6

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
246 F.R.D. 349 (D.D.C. 2007) ..............................................................8

*In re Vitamins Antitrust Litig.*,
305 F. Supp. 2d 100 (D.D.C. 2004) ....................................................12

*In re Vitamins Antitrust Litig.*,
No. MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) .............15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, at 350 (2011) ..............................................................6, 9

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1 (D.D.C. 2008) ........................................................15

*Wnorowski v. Univ. of New Haven*,
3:20-cv-01589 (D. Conn. Oct. 11, 2023) ...........................................15

*Wright v. S. New Hampshire Univ.*,
No. 1:20-cv-00609 (D.N.H.) .................................................................1

## Other Authorities

Fed. R. Civ. P. 23 ...................................................................... *passim*

## I.    INTRODUCTION

On December 12, 2023, this Court granted preliminary approval of the class action settlement between Plaintiffs, Plaintiffs Mark Shaffer, Margaret Mauldin, Charafeddine Zaitoun, and Marc Lessin ("Plaintiffs") and Defendants The George Washington University and The Board of Trustees of George Washington University ("GW" or "Defendant") and directed notice be sent to the Settlement Class. ECF No. 67. The settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") implemented the Court-approved notice plan and direct notice has reached 98.9% of the identified Settlement Class. Supplemental Declaration of Cameron R. Azari, Esq. ¶ 15 ("Supplemental Azari Decl."). The reaction from the Class has been overwhelmingly positive. Specifically, of the 19,875 unique, identified Settlement Class Member records that received direct, individual notice, **only three** Settlement Class Members objected (doing so only *in part* via two objections), and only one requested to be excluded.[1]

The Settlement is an excellent result for the class: it creates a $5.4 million non-reversionary common fund from which the Settlement Class Members will **automatically** receive cash payments. On a dollar-per-student basis, this Settlement falls squarely within the range of settlements that have been finally approved in COVID-19 tuition and fee refund cases. *See*, *e.g.*, *Botts v. Johns Hopkins Univ.*, No. 1-20-cv-01335 (D. Md.) ($6.6MM common fund); *Rocchio v. Rutgers, the State Univ. of New Jersey,* No. MID-L-003039-20 (Middlesex County, NJ) ($5MM common fund); *Smith v. University of Pennsylvania,* No. 20-cv-20286 (E.D. Pa.) ($4.5MM common fund); *D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744 (S.D.N.Y.) ($3.4MM common fund); *Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784-KAD ($2.5MM common fund); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813 (S.D. Fla.) ($2.4MM common fund);

---

[1] As of March 19, 2024. Supplemental Azari Decl. ¶¶ 9,27; Supplemental Declaration of Daniel Kurowski ¶ 4 ("Supplemental Kurowski Decl.").

*Porter v. Emerson College,* No. 1:20-cv-11897 (D. Mass.) ($2.06MM common fund); *Arredondo v. Univ. of La Verne,* No. 2:20-cv-7665 (C.D. Cal.) ($2.0MM common fund); *Fittipaldi v. Monmouth Univ.*, No. 3:20-cv-05526 (D.N.J.) ($1.3MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609 (D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common fund); *Choi v. Brown Univ.,* No. 1:20-cv-00191 (D.R.I.) ($1.5MM common fund). For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background.

Plaintiffs allege that they and Settlement Class Members paid tuition and fees for the Spring 2020 semester for courses specifically designated by Defendant George Washington University as in-person. Plaintiffs allege that they entered into a contractual agreement for specific services: an on-campus, in-person education experience at GW. Plaintiffs were to provide pre-payment, in the form of tuition and fees and Plaintiffs allege that GW, in exchange, was to provide in-person educational services, experiences, opportunities, and other related facilities to students, including Ms. Mauldin, Mr. Zaitoun, and the children of Mr. Shaffer and Mr. Lessin. Consolidated Class Action Complaint (ECF No. 17) ("Compl.") ¶¶ 12-15. They also allege they selected on-campus courses and paid for the in-class and educational experiences that only an in-person program can deliver, such as the ability to access important university facilities, services, and faculty in-person.

In registering and paying George Washington tuition and fees for the Spring 2020 semester, Plaintiffs and Class Members allege that they understood, per the Bulletin, George Washington's publications, and George Washington's usual and customary practice, that the

classes they bargained and paid for would be administered on-campus for the duration of the semester, and that they would get a full semester's worth of access to on-campus facilities, services, and resources. *Id.* ¶¶ 49-60. However, since March 10, 2020, as a result of legally mandated COVID-19 closures, Plaintiffs did not receive the on-campus experiences for which they allege they paid. *Id.* ¶¶ 3, 67-70.

Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched because of the transition to online-only education during the Spring 2020 Semester. Defendant has maintained that it acted properly, reasonably, and in accord with all applicable laws, rules, regulations, and ordinances to protect the health and safety of its students, faculty and staff, and that it violated no express or implied contractual obligations to its Spring 2020 students, particularly given the unprecedented circumstances created by the COVID-19 pandemic. Defendant also disputes that Plaintiffs would be able to meet all of the requirements necessary to certify a class. Nevertheless, GW has agreed to the settlement to avoid the time, inconvenience, costs and uncertainty of protracted litigation both for itself and its students and, most important, because it wishes to instead focus its attention and resources on its priority of continuing to provide top quality education and services to its students.

**B.    Procedural History.**

Plaintiffs' cases were consolidated in a Consolidated Class Action Complaint filed on July 15, 2020. ECF No. 17. GW moved to dismiss, which the district court granted on March 24, 2021, fully dismissing the case. ECF Nos. 18, 41-42. Plaintiffs appealed the case to the D.C. Circuit and on March 8, 2022, the D.C. Circuit affirmed in part, reversed in part, and remanded the case for further proceedings.

Since remand, the Parties engaged in significant litigation, allowing them to be well informed regarding the risks of continued litigation. GW produced approximately 45,000 pages

of documents from its files, while Plaintiffs produced approximately 1,900 pages. The Parties conducted oral discovery of all four named Plaintiffs, one non-party, and three corporate designees of Defendant under Fed. R. Civ. P. 30(b)(6). This work culminated with Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, which was supported by expert analysis by Plaintiffs' damages expert, Hal J. Singer, Ph.D. ECF No. 57. And on May 1, 2023, Defendants' counsel deposed Dr. Singer.

After Plaintiffs moved for class certification, the parties agreed to mediate. To engage in meaningful settlement negotiations, the Parties stipulated that the case be stayed for a short duration for the parties to complete mediation. ECF No. 62. The Court entered this stipulation on May 11, 2023. ECF No. 63. On May 22, 2023, the parties attended a full-day mediation with Hon. Elizabeth D. Laporte (Ret.) of JAMS Mediation Services and ultimately agreed on the pertinent key terms. The Parties then diligently collaborated to memorialize the Settlement and notice documents.

On July 31, 2023, Plaintiffs moved for preliminary approval of the class action settlement. The Court granted Plaintiffs' motion on December 12, 2023 and entered its Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Counsel, and Approving Notice Plan (ECF No. 67), setting a Final Approval Hearing for April 2, 2024.

### III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES REMAINS APPROPRIATE

The Court's Preliminary Approval Order conditionally certified the following Settlement Class: "All Students and Payors who paid or incurred tuition and/or fees to the George Washington University in connection with the Spring 2020 semester and whose tuition and/or fees have not been refunded in their entirety." ECF No. 67, ¶ 9 (the "Settlement Class"). That

conditional certification remains appropriate under the facts and issues presented here at final approval.

Under Fed. R. Civ. P. 23, a class action may be maintained if all the factors of Rule 23(a) are met, as well as one factor of Rule 23(b). Rule 23(a) requires: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  The Court should grant final approval and certification because the Settlement Class continues to meet all of the requirements of Rule 23(a) and Rule 23(b)(3). In granting preliminary approval this Court already determined that class certification for settlement purposes was warranted.  *See* ECF No. 67 ¶ 9. Nevertheless, Plaintiffs readdress the requirements in support of final approval.

**A.     Numerosity is met with over 19,875 GW Students and Payors as Class Members.**

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "There is no specified or minimum number of plaintiffs needed to maintain a class action" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 144 (D.D.C. 2014). Courts in this district have found forty or more members enough to satisfy Rule 23(a)(1). *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 205 (D.D.C. 2018). Here, numerosity is readily satisfied because the conditionally certified class included over 19,875 GW Students and Payors

as members. Supplemental Azari Decl. ¶ 9. The numerosity requirement of Rule 23(a) is readily satisfied and supports final approval.

**B.      Commonality exists given numerous questions capable of class wide resolution.**

Rule 23(a)(2) requires a plaintiff establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The key to commonality is class members' claims "must depend upon a common contention ... of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). "Even a single common question" will support a commonality finding, *id.* at 359 (alterations omitted), so long as its resolution will "generate common answers for the entire class." *Thorpe v. D.C.*, 303 F.R.D. 120, 146–47 (D.D.C. 2014). Factual differences "will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003).

Here, Plaintiffs easily satisfy commonality because there are many questions common to the Settlement Class. Common issues include: (1) whether GW and Class Members had a contract; (2) whether that contract obligated GW to provide in-person instruction; (3) whether the contract obligated GW to provide access to campus facilities and in-person resources; (4) whether GW breached the contract; (5) whether GW unlawfully kept funds paid; (6) whether GW was unjustly enriched by keeping the funds paid; and (7) the fact and measure of damages derived from verifiable classwide information maintained by GW. These common questions, which target the same alleged misconduct by GW, satisfy Rule 23(a)(2). This Rule 23 requirement also supports final approval.

**C.    The claims of the class representatives are typical of the claims of the Class Members.**

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2). The typicality requirement exists when the claims of the representative plaintiffs are based on the same legal theory and the same course of conduct as the claims of the other class members. *Bynum*, 214 F.R.D. at 35. While "[t]he facts and claims of each member of the class need not be identical … the class representatives should have suffered injuries in the same general fashion as absent class members." *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 15 (D.D.C. 2015) (internal quotations and citations omitted).

Plaintiffs' claims are typical because they arise from the same events and alleged course of conduct by GW and are based on the same legal theories. Here, Plaintiffs allege that GW breached its implied contract with students to provide an in-person educational experience by refusing to issue partial refunds for the Spring 2020 Semester. They allege GW billed them for tuition and fees for in-person courses to be provided on campus, then stopped providing the promised in-person instruction and access to campus facilities and in-person resources for all students simultaneously.  GW then allegedly retained full price for tuition and fees. Plaintiffs allege GW must refund prorated fees for the in-person courses and experiences GW did not provide when it closed campus and transitioned all courses online. Typicality is met here and also supports final approval.

**D.    The representative parties have fairly and adequately protected the interests of the Settlement Class Members.**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiffs satisfy the D.C. Circuit's two-part "adequacy" test: "(1) the named representative must not have antagonistic or

conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)). The first criterion focuses on conflicts of interest, which defeat adequacy "only if they are fundamental to the suit and ... go to the heart of the litigation." *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017).

Plaintiffs and Class Members have no conflicts and the same interest in obtaining a refund that will provide each with the benefit of their bargain. For approximately four years, Plaintiffs have shown their commitment to vigorously prosecuting this litigation and will continue to advocate for the best interests of the class.

Similarly, Class Counsel remains qualified and will continue to vigorously represent the class.  Hagens Berman has handled countless complex class action cases, including claims of students whose colleges and universities transitioned from in-person to online-only education across the country, giving them substantial knowledge in the applicable law. Kurowski Decl. Supp. Pls. Mot. Preliminary Approval. ("Kurowski Decl.") ¶¶ 4-15 (ECF No. 66-2); *see also* Firm Resume of Hagens Berman (ECF No. 66-3). During the past four years, Class Counsel— along with co-counsel at Berger Montague PC and Levetown Law, LLP —have investigated and zealously pursued claims against GW, briefed and argued the motion to dismiss, briefed and argued a successful appeal before the D.C. Circuit, conducted discovery resulting in voluminous production, defended Plaintiffs' and non-party depositions, took multiple Rule 30(b)(6) depositions, retained and advanced costs for an expert witness, defended the deposition of their expert, and conducted substantial research under "District of Columbia law to the novel and

challenging issues" presented in this case. Kurowski Decl. ¶¶ 17; *Shaffer v. George Washington Univ.*, 27 F.4th 754, 760 (D.C. Cir. 2022).

Accordingly, since Plaintiffs and Class Counsel have continued to demonstrate their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.  This Rule 23 factor supports final approval.

### E.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These elements are commonly referred to as "predominance" and "superiority." *See Barnes v. District of Columbia*, 242 F.R.D. 113, 123 (D.D.C. 2007). Both predominance and superiority are met here.

#### 1.    Common questions predominate.

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Wal-Mart Stores*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., v. Windsor*, 521 U.S. 591,623 (1997). The predominance requirement is designed to determine whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. Plaintiffs allege a common course of conduct by GW.  Common issues predominate because Plaintiffs can prove injury on a classwide basis without conducting individualized inquiries. *See In re Rail Freight Fuel Surcharge Antitrust Litig.,*–MDL No. 1869, 725 F.3d 244, 252–53 (D.C. Cir. 2013). This Rule 23 requirement continues to support final approval.

2.    **A class action is superior to other mechanisms, particularly individual litigation.**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). The superiority requirement is intended to "ensure that resolution by class action will 'achieve economies of time, effort, and expense and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd*., 246 F.R.D. 349, 359–60 (D.D.C. 2007) (quoting *Amchem*, 521 U.S. at 615). Class actions are superior where many individuals have small claims but it is not economically feasible to pursue them individually. *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 10 (D.D.C. 2013). Here, Plaintiffs and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits arising from the same allegations. The cost of individual litigation would far exceed the amount of any recovery individually available. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the Settlement Class Members' claims. This final Rule 23 requirement, like the others before it, supports final approval.

## IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

In order to grant final approval, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).

The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).  The notice plan here easily meets these standards, as individual notice efforts reached approximately 98.9% of the identified Settlement Class.  *See* Supplemental Azari Decl. ¶ 7. Moreover, "[t]he reach was further enhanced by a Publication Notice in selected national newspapers, digital/internet notice and social media, internet sponsored search listings, an informational release, and a Settlement Website." *Id.*

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 67 ¶ 12. The notice administrator fully effectuated the Notice Plan. Pursuant to the Settlement, Defendant provided Epiq with a list of 25,948 Settlement Class Member records, which contained, where available, names, last known postal addresses, and email addresses. Supplemental Azari Decl. ¶ 9.  Epiq deduplicated and rolled-up the account records and loaded the unique, identified Settlement Class Member records into its database for this Settlement. *Id.* These efforts resulted in 19,875 unique, identified Settlement Class Member records. *Id.* An Email Notice was sent to all identified Settlement Class Members for whom a valid email address was available, and a Short Form Notice was sent via USPS first class mail to all identified Settlement Class Members with a postal address for whom the Email Notice was undeliverable after multiples attempts. *Id.* As a result, Epiq sent 35,740 Email Notices (many of the identified Settlement Class Members included more than one valid email address) and 447 Short Form Notices to identified Settlement Class Members. *Id.* The Notices clearly described the case and the legal rights of the Settlement Class Members. *Id.* In addition, the Notices directed the recipients to a Settlement Website where they could access additional information. *Id.* As of March 15, 2024, an Email Notice and/or

Short Form Notice was delivered to 19,659 of the 19,875 unique, identified Settlement Class

Members. *Id.* ¶ 15. This means the individual notice efforts reached approximately 98.9% of the

identified Settlement Class Members. *Id.*

While such notice efforts would readily satisfy due process requirements and Rule 23, the

efforts did not stop there.

- To supplement the individual notice efforts, a Publication Notice appeared in a weekday, national edition of *New York Times* and *The Washington Post*, with a combined circulation of more than 437,000. Supplemental Azari Decl. ¶17.

- The Notice Plan also included targeted Digital Notice advertising on the *Google Display Network,* as well as advertising on social media, which consisted of internet Digital Notices on *Facebook* in multiple sizes. *Id.* ¶ 18. Combined, more than 31.2 million impressions were generated by the Digital Notices, which were displayed nationwide. *Id.* ¶ 20.

- To facilitate locating the Settlement Website, sponsored search listings were acquired on the three most highly-visited internet search engines: Google, Yahoo! and Bing. *Id.* ¶ 22.

- And to build additional reach and extend exposures, on January 9, 2024, a party neutral Informational Release was issued nationwide over PR Newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States as well as approximately 4,500 websites, online databases, internet networks, and social networking media. *Id.* ¶ 23.

As a result, the Notice Plan provided the best notice practicable under the circumstances,

conformed to all aspects of Federal Rule of Civil Procedure, Rule 23 regarding notice,

comported with the guidance for effective notice articulated in the Manual for Complex

Litigation, Fourth and applicable FJC materials, and satisfied the requirements of due process,

including its "desire to actually inform" requirement. *Id.* ¶ 31. And the Notice Plan schedule

afforded enough time to provide full and proper notice to Settlement Class Members before any

opt-out and objection deadlines. *Id.* ¶ 32. Given the broad reach of the notice, and the

comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  While the Court must "scrutinize the terms of the settlement carefully . . . the discretion of the Court to reject a settlement is restrained by the 'principle' of preference' that encourages settlements." *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000). A trial court "must keep in mind that private resolution of claims is strongly favored over litigation." *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 211 (D.D.C. 2008). This preference particularly applies in class action litigation. *See Little v. Washington Metro. Area Transit Auth.,* 313 F. Supp. 3d 27, 34 (D.D.C. 2018) (noting "courts favor the resolution of disputes through voluntary compromise, and, therefore, strongly encourage settlements," adding "[i]n the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits").

In reviewing a class action settlement, "[t]he court is charged with determining that the settlement is fair, that the parties and their counsel have adequately represented all class members, and that the relief agreed upon is reasonable." *Id.* (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004)). Courts consider numerous factors in determining the fairness of a class action settlement, including: "a) the terms of the settlement in relation to the strength of plaintiffs' and defendants' arguments; b) the existence of arms' length negotiations; c) the status of the litigation at the time of the Agreement; d) the representations of

experienced counsel; and e) the class reaction to the Agreement." *Id*. These factors and Rule 23(e)(2) support final approval.

**A.      First Factor: Terms of the Settlement in Relation to Strengths of Arguments Supports Approval.**

Courts evaluating a settlement review the relief provided against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial. *Equal Rights Ctr. v. Washington Metro. Area Transit*, 573 F. Supp. 2d 205, 211 (D.D.C. 2008). The Parties have analyzed the strengths and weaknesses of their respective positions and the risks, time, and expense of continued litigation. The Settlement provides certain relief to the class, while continued litigation is difficult to predict because the COVID-19 pandemic created many issues of first impression. Plaintiffs recognize that continued litigation "entails substantial risks," and that victory "certainly cannot be assumed." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *4 (D.D.C. June 16, 2003). Weighing the benefits of the Settlement against the risks, the Settlement is more than reasonable. Thus, this factor supports final approval.

**B.      Second Factor: The Existence of Arms' Length Negotiations Supports Approval.**

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (quoting Manual for Complex Litigation § 30.42).  Here, the Settlement agreement was effectuated after negotiations by experienced counsel and a full-day arm's length mediation before Judge Elizabeth Laporte. This Settlement is fair and reasonable and is well within the settlement range for COVID-19 college tuition refund litigation. *See supra* at 1-2 (collecting approved settlements of COVID-19 university refund litigation). This factor supports final approval.

**C.     Third Factor: Status of Litigation Supports Approval.**

Courts have considered the "status of litigation at the time of settlement" as a factor in determining whether a proposed settlement warrants final approval. *See, e.g., Equal Rights Ctr.*, 573 F. Supp. 2d at 212; *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 57–58 (D.D.C. 2008). Here, Class Counsel briefed a motion to dismiss, briefed and argued a successful appeal before the D.C. Circuit, conducted discovery resulting in voluminous productions, defended Plaintiffs' depositions, non-party depositions, and their expert's deposition, took Rule 30(b)(6) depositions of multiple designees, retained and advanced costs for an expert witness, and conducted substantial research regarding the novel legal issues raised in this case in support of briefing during the history of the case. *See* Kurowski Decl. ¶ 17. As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiffs' claims, GW's defenses, and prospects for success. This factor supports final approval.

**D.     Fourth Factor: The Representation of Experienced Counsel Supports Approval.**

"Opinion of ... experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99–0790, 2003 WL 22037741, *6 (D.D.C. June 16, 2003). Proposed Class Counsel is qualified. Hagens Berman has handled countless complex class action cases, including claims of students whose colleges and universities transitioned from in-person to online-only education across the country. This factor supports final approval.

**E.     Fifth Factor: The Class Reaction to the Agreement.**

After the broad Notice of the Settlement issued to the Class, only three Class Members objected via two objections (ECF Nos. 70 and 71). Supplemental Kurowski Decl. ¶¶ 2-4. And as to the specific objections, the Objectors did not object to the fairness of the settlement itself, offering only objections *in part* as to (1) Plaintiffs' fee and cost reimbursement request

(Objectors Heidloff, West and Aledorf) and (2) objections to the request for service award

payments for the Plaintiffs/Class Representatives (Objectors Heidloff and West but not Objector

Aledort).[2] *See* ECF No. 70 (Objectors Heidloff and West: "Objectors respectfully request that the

Court limit Attorneys' Fees to $1,530,000, representing 28.33% of the all-cash common fund,

and deny the request for Class Representatives' service awards."); ECF No. 71 at 2, 8 (Objector

Aledort: "No objection to the $10,000 service fee to the named Plaintiffs is made…Class

Member Aledort respectfully requests that the Court deny plaintiffs' attorneys motion for fees in

part: (1) deny attorneys' fees, costs, and expenses in the amount of one-third of the settlement

fund ($1,799,820.00), and instead award a lower attorneys' fee using either loadstar or no more

than 20% of the settlement fund."). Only one class member requested exclusion. This is an

overwhelmingly positive reaction from a sizeable Class and the Court should grant final

approval.

**F.    The Remainder of the Rule 23(e)(2) Factors Support Final Approval.**

    **1.    The Allocation Plan continues to be fair, reasonable and adequate.**

    "As with settlement agreements, courts consider whether distribution plans are fair,

reasonable, and adequate." *In re Lorazepam*, 2003 WL 22037741, at *7. An allocation plan

"'need not be perfect', [r]ather, it suffices if the plan has 'a reasonable, rational basis,

particularly if recommended by experienced and competent class counsel.'" *In re Fed. Nat'l

Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 108 (D.D.C. 2013). Like

other COVID-19 university litigation settlements on behalf of students and payors previously

approved as fair, reasonable and adequate (*see supra* at 1), the Settlement provides equal, direct

and importantly ***automatic payments*** to all students who qualify, excluding students who were

---

[2] Contemporaneously with this Motion for Final Approval, Plaintiffs separately respond to these objections in their Response to Objections and Reply in Support of Service Awards, Attorneys' Fees & Costs.

not required to pay out of pocket for the Spring 2020 Semester. Although GW students were ultimately responsible for ensuring their tuition was paid, the Settlement allows the ability to transfer the cash award from a student to an individual (like a parent) who paid GW tuition and/or fees on behalf of a student.

> **2.    The implemented form and method of providing Notice to the Settlement Class was appropriate, meeting all Rule 23 and due process expectations.**

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Due process "does not require actual notice to all class members who may be bound by the litigation, notice is adequate . . . if it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *In re Domestic Airline Travel Antitrust Litigation*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018). Here, the Notice Plan included an extensive individual notice effort to the identified Settlement Class Members. Azari Decl. ¶ 38. With the address updating protocols that were used, the Notice Plan individual notice efforts reached approximately 98.9% of the identified Settlement Class Members. *Id.* The reach was further enhanced by a Publication Notice in selected national newspapers, digital/internet notice and social media, internet sponsored search listings, an informational release, and a Settlement Website. *Id.* The Federal Judicial Center's ("FJC") Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the Settlement Class. It is reasonable to reach between 70–95%." *Id.* (citation omitted). As a result, the Notice Plan that was developed and implemented here achieved a reach at the high end of that standard and provided the best notice practicable under the circumstances, in conformance with all aspects of Federal Rule of

Civil Procedure.  *Id.* ¶¶ 38, 40. Accordingly, the Notice Plan was clearly fair, reasonable, and adequate.

  **3.**  **The requested Service Awards and Attorneys' Fees and Expenses are reasonable and in-line with other similar settlements in this area of law.**

  As noted in their Motion for Attorneys' Fees, Costs, and Service Awards, Class Counsel's request for a Fee Award and expense reimbursement not to exceed 33% of the Settlement Fund is reasonable. *See* ECF 68; *see also Ferrer v. CareFirst, Inc*., No. 16-CV-02162 (APM), 2019 WL 11320974, at **8 -9 (D.D.C. Sept. 30, 2019) (approving a base attorneys' fee award of 30% then awarding "an additional ten percent increase to the base award"); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78–79 (D.D.C. 2011) ("Finally, a 33% award is consistent with the award in other common fund cases from this district. Accordingly, the Court finds that Class Counsel's request for fees is reasonable and should be approved.") (citations omitted); *Bynum v. D.C*., 412 F. Supp. 2d 73, 85 (D.D.C. 2006) ("A 1/3 fee is within the range of what is customarily awarded in this District" and awarding 33% of $12 million fund) (citation omitted); *In re Vitamins Antitrust Litig*., No. MDL 1285, 2001 WL 34312839, at *12 (D.D.C. July 16, 2001) ("Moreover, the Court notes that a one-third recovery is a common percentage arrived at in contingency fee cases. Since the percentage of recovery method is meant to simulate awards that would otherwise prevail in the market, the Court finds a one-third attorneys' fees recovery in this case to be reasonable.") (citations omitted).

  The service award of $10,000 for each Plaintiff is well-justified, reasonable, and less than other awards approved in this Circuit. *See, e.g., Lorazepam*, 2003 WL 22037741, at * 11 (approving $20,000 incentive awards to named plaintiffs); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (approving $10,000 service award). This service award is well within the range of service awards approved in similar COVID-19 university litigation

settlements. *See In re Columbia Univ. Tuition Refund Action*, No. 1:20-cv-03208 (JMF)

(S.D.N.Y. Mar. 29, 2022) (approving $25,000 service award request); *Botts v. Johns Hopkins*

*Univ.,* 1:20-cv-01335-JRR (D. Md. April 20, 2023) (approving $12,500 service award request);

*D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022) (approving

$10,000 service award request); *Faber v. Cornell Univ.,* 3:20-cv-00467-MAD-MIL (N.D.N.Y.

Dec. 13, 2023) (approving $10,000 service award request); *Wnorowski v. Univ. of New Haven,*

3:20-cv-01589 (D. Conn. Oct. 11, 2023) (approving $10,000 service award request); *Ford v.*

*Rensselaer Polytechnic Institute,* 1:20-cv-00470-DNH-CFH (N.Y.N.D. Jan. 9, 2024) (approving

$10,000 service award request). *See also* Response to Objections and Reply in Support of

Service Awards, Attorneys' Fees & Costs (contemporaneously filed).

### 4. The Parties have no additional agreements.

Besides the Settlement Agreement itself, there are no additional agreements other than a

term sheet the parties signed at the conclusion of mediation, which is consistent with (and

replaced by) the Settlement Agreement. *See* Kurowski Decl. ¶ 20.

### 5. Proposed Settlement Class Members are treated equitably.

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably.

The proposed Settlement treats Settlement Class Members equitably as they will receive equal

awards, and in turn, all Settlement Class Members will give GW the same release.

### VI.    CONCLUSION

In its Preliminary Approval Order, the Court recognized that the Settlement Agreement

"is fair, reasonable, and adequate, within the range of possible approval, and in the best interests

of the Settlement Class… ." ECF No. 67 at ¶ 4.  Following an extensive notice campaign, this

conclusion remains as true today as it did in December 2023.  The Settlement Agreement is fair,

reasonable, and adequate, and the Court should grant final approval.  Accordingly, for the

reasons set forth above, and in their related papers submitted in support of the Settlement,

Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the

Settlement and enter the Final Approval Order. Plaintiffs further request that the Court grant

them all such other relief as deemed necessary and appropriate.

Dated: March 19, 2024     Respectfully submitted,

By: _/s/ Daniel J. Kurowski_
  Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

*Attorneys for Plaintiffs and Class Counsel.*

Andrew S. Levetown (Bar No. 422714)
LEVETOWN LAW LLP
717 D Street NW, Suite 306
Washington, DC 20004
(703) 618-2264
andrew@levetownlaw.com

E. Michelle Drake (*pro hac vice*)
BERGER MONTAGUE PC
43 SE MAIN STREET, SUITE 505
Minneapolis, MN 55414
Tel: (312) 594-5999
Email: emdrake@bm.net

Daniel J. Walker (Bar No. 219439)
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Tel: (202) 559-9745
Email: dwalker@bm.net

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on March 19, 2024 a true and correct copy of the foregoing, together with all attachments thereto was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.  In addition, a copy was posted on the settlement website at GWsettlement.com, and courtesy copies were emailed to Objectors West, Heidloff and Aledorf.

By:   _/s/ Daniel J. Kurowski_
          Daniel J. Kurowski